## BOGEN & TRUMMEL v. PROTTER.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1904.)

No. 1,266.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—SUFFERING PREFERENCE THROUGH LEGAL PROCEEDINGS.

A debtor who does not pay a lawful debt when due, upon which the creditor obtains a judgment against him and levies on his property, "suffers and permits" the creditor to obtain a preference, through legal proceedings, within the meaning of Bankr. Act July 1, 1898, c. 541, § 3, subd. 3, cl. "a," 30 Stat. 546, 547 [U. S. Comp. St. 1901, p. 3422], which, if he is insolvent, and unless he discharges the preference at least five days before the time for sale under the levy, constitutes an act of bankruptcy.

2. SAME—BURDEN OF PROVING SOLVENCY—FAILURE TO PRODUCE BOOKS.

Under Bankr. Act July 1, 1898, c. 541, § 3d, 30 Stat. 546, 547 [U. S. Comp. St. 1901, p. 3422], which requires a person charged with bankruptcy, who denies his insolvency, to appear for examination "with his books, papers and accounts," a merchant is required to produce such books, invoices, etc., as should properly be kept in his business, and which are necessary to show the amount of his assets and liabilities, and his failure to do so, without satisfactory explanation, casts upon him the burden of proving his solvency.

3. SAME—EVIDENCE ON ISSUE OF INSOLVENCY.

Where a portion of the stock of goods of an alleged bankrupt was destroyed by fire shortly before the filing of the petition, and his insurance thereon was unadjusted, it was competent on the issue of insolvency to show the value of his stock before the fire as well as that remaining, and evidence was admissible to contradict or impeach his own estimates or appraisals.

In Error to the District Court of the United States for the Northern District of Ohio.

In Bankruptcy.

Squire, Sanders & Dempsey, White, Johnson, McCaslin & Cannon, and Amos Burt Thompson, for plaintiffs in error.

R. A. Castner and L. F. McGrath, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge, delivered the opinion of the court.

This was a petition filed by the plaintiffs in error against the defendant in error, Jacob Protter, asking that he be adjudged a bankrupt on the ground that, in violation of subdivision 3 of section 3, clause "a," Bankruptcy Act, he had, while insolvent, "suffered or permitted certain creditors to obtain a preference through legal proceedings." Act July 1, 1898, c. 541, 30 Stat. 546, 547 [U. S. Comp. St. 1901, p. 3422]. Protter answered, admitting that judgments had been rendered and executions levied as averred, but denying that thereby he violated the provision mentioned. He also denied he was insolvent, and demanded a jury trial. Upon the trial he appeared for examination, but failed to produce some of the books, papers, and accounts called for by the petitioners. The court declined to hold that for this failure the burden of proving his solvency rested upon him, and, having excluded sub-

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 82.

stantially all the testimony offered by the petitioners, directed a verdict for the defendant, on the ground that the evidence did not prove insolvency.   The case is here upon certain assignments of error.

1. For some years prior to July 4, 1902, Protter was engaged in the umbrella business in Cleveland, Ohio.   His liabilities at that time amounted to about $22,000, and he had insurance policies aggregating $35,000 on his stock of goods.   On that day there was a fire in his store, and thereafter he practically did no business.   On August 30th he made out proofs of loss, based upon an appraisement made by Hower, an insurance adjuster, and others, in which he claimed his entire loss by fire was $18,476.95.   The insurance companies rejected these proofs upon a number of grounds, and up to the time of the trial below no amended proofs had been filed.   There were conferences between Protter and his attorneys and the attorneys representing certain of his creditors, at which Protter offered to pay 40 cents on the dollar, the creditors demanding 50 cents, so no agreement was reached.   In October two judgments were rendered against him, one in a suit brought by the Wheeler & Wilson Manufacturing Company, the other in one brought by the Rest-Henner-Smith Company, upon which executions issued and levies were made, the property being advertised for sale in the first case on October 25th, and in the second on October 27th.   On October 24th the petition praying that Protter be adjudged a bankrupt was filed.   It is insisted that, under the circumstances, Protter did not "suffer or permit" these creditors to obtain a preference through the judgments and levies mentioned; that he cannot be said to "suffer or permit" that which he could not prevent; that, to come within the meaning of the law, he must have consciously and voluntarily co-operated with the creditors in "obtaining" the preference.   But it was held in the case of Wilson v. Nelson, 183 U. S. 191, 198, 22 Sup. Ct. 74, 77, 46 L. Ed. 147, that "the act of 1898 makes the result obtained by the creditor, and not the specific intent of the debtor, the essential fact."   A debtor who does not pay a lawful debt when due, and stands by while his creditor secures a judgment against him and levies upon his property, certainly "suffers and permits" such judgment to be taken, levy made, and preference thereby obtained.   The debtor still has the privilege of avoiding the act of bankruptcy by discharging the preference at least five days before the time set for sale.   But Protter did not take advantage of this, so the only question in his case is whether he was insolvent at the time he committed the act of bankruptcy.

2. We have quoted the words of subdivision 3 defining the act of bankruptcy charged against Protter.   Clause "d" of the same section provides:

"Whenever a person against whom a petition has been filed as hereinbefore provided under the second and third subdivisions of this section takes issue with and denies the allegation of his insolvency, it shall be his duty to appear in court on the hearing, with his books, papers and accounts, and submit to an examination, and give testimony as to all matters tending to establish solvency or insolvency, and in case of his failure to so attend and submit to examination the burden of proving his solvency shall rest upon him."

Protter's assets at the time he committed the act of bankruptcy consisted of his notes and bills receivable (put at $2,436.78), the goods on hand after the fire, and his claim against the insurance companies.

The last two items, the value of his goods on hand after the fire and his loss and damage by the fire, should equal the value of his goods before the fire. To ascertain, therefore, his financial condition, and determine whether he was solvent or not, it was necessary to know the amount and value of the goods he had on hand at the time of the fire, and to do this it was necessary to have the last inventory taken before the fire, with the books showing the purchases and sales since. Under the above provision of the bankruptcy act it was Protter's duty to appear in court "with his books, papers and accounts." The books, papers, and accounts referred to are those material in determining an alleged bankrupt's financial condition. Protter appeared, but he did not produce the books and records which would disclose the amount and value of the goods he had in his store at the time of the fire. He testified that an inventory of his stock was made in December, 1901, showing the goods then on hand were worth about $43,000, but he did not produce this. All he had was what he claimed was a summary of it copied into a small book. Lacking the inventory, he might have supported his statement as to its result by producing his books for the preceding years, but he did not do so. All of the books for 1899 and 1900 were missing, and the ledger, cashbook, salesbook, and checkbook for 1901. Not only were these books missing, but also the more important books for the six months of 1902 preceding the fire—the salesbook, shipping book, cashbook, and ledger. No wonder that Hower, the insurance adjuster employed by Protter, stated on the stand that, with the data he had at hand, it was impossible to determine the amount of the goods totally destroyed! With these books missing, it was impossible to ascertain Protter's financial condition. The law expects a merchant charged with bankruptcy to support his statements by his books, which speak for themselves. If he submits to examination and produces his books, and his insolvency does not appear, the burden is upon the petitioners to make the proof; but if he fails to appear for examination, or fails to produce his books, the burden is upon him to prove his solvency. In this case the testimony showed the salesbook for 1902 was on hand just before the fire. It disappeared after the fire, although it was not burned up. So with the other books. No satisfactory explanation of their disappearance was furnished. It is not sufficient for an alleged bankrupt, when called upon to produce his books, to say, "I don't know where they are." It is his business to know where they are. They are the only proper proof of his financial condition. He must not only keep proper books of account, but preserve them, and produce them when called upon. He fails to do so at his peril. The court should have held that under the circumstances the burden of proving his solvency rested upon Protter.

3. The inventory on which Protter's proof of loss was based was made by Hower, an insurance adjuster, Wise, a clerk of Protter, and two others. Hower wrote down the items, which were called out by Wise. The quantities were given by Wise, the prices by Protter. Where the goods were in the original bolt or package, the yardage on the tag was taken. If the bolt had been broken, the quantity was estimated by counting the folds. In this way the appraisers estimated the goods on hand to be worth $22,864.08, sound value. The damage to

them was arbitrarily placed at 65 per cent., or $14,849.95. The goods totally destroyed were estimated at $3,180. Hower stated that it was entirely impossible to determine the value of the goods totally destroyed. They had no data to go back to—no inventory of the goods. All they had to depend on was the information given them by Protter as to what was stored where the fire was the worst and the contents of the shelves totally burned. Protter objected to placing the value of the goods totally destroyed at $3,180, and urged a higher figure, but Hower and Protter's lawyer both insisted that no larger claim for goods totally destroyed should be made until additional proof was secured. If he could furnish further proof, the claim in that regard could be amended. Shortly after the Protter appraisement, and while the goods remained undisturbed, an appraisement was made by the fire marshal and four men of experience—Lowe, Lemmers, Bruce, and Sommers. Lowe had been in the umbrella business 13 years. This appraisement began about July 30th. The appraisers had the benefit of the inventory made by Protter's appraisers. Lowe testified there was no evidence of a big fire. There were three rooms in the building—a front room, used as an office and salesroom; a middle room, used as a stockroom; and a rear room, used as a workshop. The bulk of the stock was in the middle room. There was evidence of fire in four or five places in the room. The stock for the most part was in cases and covered up, so was not badly damaged. The appraisers were engaged nine days. They found the items set out in the former appraisement, but the quantities were not the same. There was a shortage in the yardage. They would find an original bolt of silk marked "105 yds." on the tag, and on measuring it would find only 55 or 60 yards. In at least a third of the cases the tags had been torn off. As the result of the appraisement, the sound value of the goods found was placed at $9,015.26, and the actual value at $7,706.16, leaving $1,310.10 as the loss and damage under the policies. Before Lowe's examination was concluded, he was stopped by the court virtually taking the position that testimony which tended to impeach the correctness of the appraisement made by Protter, or to show there could not have been on hand at the time of the fire the amount of goods Protter claimed was on hand, was incompetent. Thus the witness was not permitted to answer the question: "And in how many cases did you find the yardage incorrect in the Protter inventory?" The court took the view that all testimony given by Lowe went to an issue which would have to be tried somewhere else, namely, the amount Protter should recover on his policies; that the fact of holding policies in solvent insurance companies to the amount of $35,000 raised a presumption that that was valid insurance, and that whatever assets he had when the fire occurred were prima facie covered by that insurance. Accordingly, the court refused to permit the other appraisers, who, along with Lowe, had gone over Protter's stock of goods after the fire, to testify, and, having thus excluded the evidence impeaching Protter's statement and inventory, directed a verdict for the defendant, on the ground there was no proof of his insolvency. We think the court was palpably wrong in excluding the testimony offered and in directing a verdict for the defendant. Because Protter failed to produce his inventory and books, it did not follow that his verbal statement of the

amount of goods he had on hand at the time of the fire was conclusive. His own appraisers first contradicted his statement, and impeached the alleged inventory on which it was based, by making out a proof of loss, which placed the sound value of the goods on hand at the time of the fire at $26,000, instead of $43,000. The claim against the insurance companies based upon this appraisal amounted to about $18,000. It was undoubtedly true, as the court suggested, that, having ascertained the value of the goods on hand before the fire, the presumption was that the policies, being in solvent companies, would make good the loss. But conceding this, the question remained to be determined by the jury, "What was the value of the stock on hand at the time of the fire?" The proper proofs of this, to wit, the inventory and books, were not produced, and in their absence it was necessary to resort to other testimony. The method which Protter himself employed in preparing his proof of loss was an appraisement which would not only ascertain the goods on hand and their value, but serve as a basis for an estimate both of the damage to them and of the amount and value of the goods totally destroyed. Certainly it cannot be contended that because Protter had policies aggregating $35,000, and a fire took place in his store, therefore it must be presumed that his claim against the insurance companies amounted to the face of the policies. The policies were merely contracts to make good whatever loss or damage he might suffer by fire, not exceeding $35,000. His claim must be measured and limited by the extent of his loss and damage, and this obviously by the value of the goods on hand when the fire broke out. If he only had $15,000 worth of goods on hand, he could not be damaged to any greater extent. It was therefore entirely competent to introduce testimony tending to show that he never had on hand at the time of the fire $26,000 worth of goods. Taking the character of the goods he dealt in, and which he described, it was competent to show that there was not space enough in his store to hold $43,000 worth of such goods. It was further proper to show that Protter's appraisement was wrong, if not fraudulent; that the quantities were overstated; that, instead of having on hand after the fire $22,000 worth of goods, he only had $9,000 worth. The court therefore erred in excluding the testimony referred to.

4. Protter stated that his accounts and bills receivable amounted to $2,436.78. Lowe and the appraisers who worked with him ascertained the goods on hand, after the fire, to be worth (sound value) $9,015.26, and Protter's appraisers placed the value of the goods totally destroyed at $3,180.00. These amounts aggregated $14,632.04, and it was conceded that Protter's liabilities amounted to $22,000. In view of this, we think it was for the jury to determine whether Protter was insolvent or not. The court erred in taking the case from the jury and directing a verdict for the defendant.

The judgment of the court below is reversed.