CUMMINS GROCER CO. et al. v. TALLEY.

(Circuit Court of Appeals, Sixth Circuit. April 4, 1911.)

No. 2,050.

1. BANKRUPTCY (§ 91*)—BOOKS AND PAPERS—FAILURE TO PRODUCE—EFFECT.
Under Bankr. Act July 1, 1898, c. 541, § 3, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3423), providing that a bankrupt's failure to attend a hearing and submit to an examination and to produce books, papers, and accounts shall place on him the burden of proving his solvency, failure of an alleged bankrupt to produce for examination certain books, papers, and accounts *held* to throw upon the alleged bankrupt the burden of proving his solvency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137–139; Dec. Dig. § 91.*]

2. BANKRUPTCY (§ 91*)—SOLVENCY—ASSETS—CORPORATE STOCK—FAILURE TO PRODUCE CERTIFICATES.
Failure of an alleged bankrupt to produce certificates and certain accounts and notes for corporate stock claimed to have been owned by him and alleged to constitute a part of his assets would not have justified an instruction to disregard the value thereof in determining the issue of solvency.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 91.*]

3. APPEAL AND ERROR (§ 1039*)—RULINGS—PREJUDICE.
Petitioning creditors in an involuntary bankruptcy proceeding were not prejudiced by the overruling of an objection for duplicity to a plea, where

the court excluded the evidence offered on one of the issues alleged to constitute duplicity.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1039.*]

4. BANKRUPTCY (§ 89*)—PETITIONING CREDITORS—ESTOPPEL.

In an involuntary bankruptcy proceeding, the alleged bankrupt filed a plea alleging that at the time the petition and plea were filed he had more than 12 creditors, all of which, except the petitioners, had signed a paper objecting to the proceedings, and that since the petition was filed appellants had colluded in contempt of court to compel defendant to pay the claim of the third petitioning creditor (the P. Company) at the risk of furnishing evidence of his own insolvency to be used on the hearing of the bankruptcy case, that by such collusion appellants were permitted by the P. Company to bring the suit on the P. Company's claims, and a judgment having been recovered, defendant was compelled to pay the same by reason of which the P. Company was no longer a creditor, and hence that there was no longer the requisite number of petitioning creditors to sustain the court's jurisdiction. *Held*, that such plea was not demurrable, since, if the facts stated were true, appellants were estopped to further prosecute the proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 120–122; Dec. Dig. § 89.*]

5. BANKRUPTCY (§ 77*) — INVOLUNTARY PROCEEDINGS — PETITIONING CREDITORS.

Where two of three petitioning creditors in an involuntary bankruptcy proceeding were responsible for the payment of a judgment on the claim of one of them and the latter's withdrawal as a petitioning creditor, both were estopped to complain of the paid creditor's withdrawal from the proceeding.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 107; Dec. Dig. § 77.*]

6. BANKRUPTCY (§ 92*)—INVOLUNTARY PROCEEDINGS—PAYMENT OF CREDITOR —WITHDRAWAL.

Where one of three petitioning creditors in an involuntary bankruptcy proceeding recovered judgment during the pendency of the proceeding, the fact that the alleged bankrupt elected to pay the judgment, rather than sue out a writ of certiorari, on condition that the paid creditor withdraw from the proceeding, and that the judgment was paid with money advanced by a friend of the alleged bankrupt. did not as a matter of law take away the effect otherwise occasioned by the alleged collusive suit, and the withdrawal of the petitioning creditor so paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 135; Dec. Dig. § 92.*]

7. BANKRUPTCY (§ 92*) — INVOLUNTARY PETITION — DISMISSAL — NOTICE TO CREDITORS.

Bankruptcy Act July 1, 1898, c. 541, § 58a (8) 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444), provides that creditors shall have at least 10 days notice by mail unless they waive notice in writing of the proposed dismissal of the proceedings, and section 59d declares that if the petition alleges that there are less than twelve creditors, and less than three have joined as petitioners, and the answer avers the existence of a larger number, a list shall be filed with the answer and all creditors shall be notified, and, if prior or during the hearing a sufficient number shall join, the cause may proceed, otherwise it shall be dismissed. Defendant had more than twelve creditors and only three originally joined as petitioning creditors. One of these was allowed to withdraw on his claim being paid, and it was shown that all the others except two (and aside from the alleged preferred creditor) had signed a written statement objecting to the proceedings, and, though notice had been given, no creditors had intervened. *Held*, that the court was authorized on determin-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing that the two remaining petitioners were estopped to continue to prosecute the proceedings to dismiss the same without the giving of the notice of dismissal to creditors provided by section 58a.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 92.*]

Appeal from and in Error to the District Court of the United States for the Western District of Tennessee.

Petition by the Cummins Grocer Company and others for adjudication in involuntary bankruptcy against Ben Talley. From a judgment dismissing the petition, plaintiffs bring error and appeal. Order dismissing the proceedings affirmed, and order adjudging defendant not a bankrupt reversed.

Thos. M. Scruggs, for appellants.

Caruthers Ewing, for appellee.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. The appeal and writ of error are brought to review an order of the court below adjudging appellee not a bankrupt and dismissing the petition for bankruptcy. The act of bankruptcy alleged therein was the conveyance of a large amount of real estate in trust for the benefit of a creditor, with the alleged intent to prefer such creditor. The answer of the respondent denied "that within four months next preceding the date of the filing of said petition " * * he transferred while insolvent a portion of his property * * * for the use of the Bank of Commerce & Trust Company," etc. There was otherwise no denial of insolvency. The alleged bankrupt demanded a trial by jury "in respect to the questions concerning which it is so entitled by the laws of the United States." Several months later the petitioning creditors joined issue upon this answer by replication, which stated that they would "hear the cause on bill, answer, and proofs against the defendant." Later the petitioning creditors moved to strike out the plea, "because said plea is not in conformity with the official form prescribed by the general orders in bankruptcy." The denial of this motion is assigned as error.

The answer was not in proper form. It contained no express denial of insolvency, such denial being only by way of negative pregnant. Had motion been made to strike it out previous to joining issue thereon, it would seem that the motion would have been good. But not so after issue was joined. Insolvency was denied argumentatively and inferentially. That petitioning creditors construed the answer as denying insolvency is shown not only by the joinder of issue, but also by the statement made by counsel for the petitioning creditors upon the opening of the trial before the jury, that "the next issue, as I understand it, is: Was Mr. Ben Talley on that day solvent or insolvent?" On the day on which the motion to strike out the original plea was denied, the alleged bankrupt, by leave of the court, filed a so-called "additional plea," alleging that the two appellants here were estopped by reason of conduct set out in the plea from further prosecuting the petition for bankruptcy. The allegations of this plea

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the proceedings thereunder will later be more fully stated. In connection with that plea, and as a part thereof, the appellee filed a detailed statement of his assets, together with the valuation placed by him upon the same; also a list of his creditors (being 20 in number aside from the appellants), with an approximate statement of the amount owing to each of said creditors. A few days later the respondent amended his additional plea by stating the places of address of each of the creditors so scheduled. By these schedules the debtor's assets appeared to be largely in excess of his debts. Among the items of claimed assets were the following:

```
Claim against Alabama Western Ry. Co., about.................$120,000 00
    (No incumbrances.)
Accounts and notes ($7,000.00), good..........................    4,000 00
Corporate stock:
    Talley-Bates Construction Co. (of doubtful value)...........   20,000 00
    Cummins Grocery Co. (of doubtful value).....................    1,500 00
Also obligation to Talley, due by Lee Cummins, as co-indorser
    with Talley on notes paid by Talley (one-half of $2,100.00).....    1,050 00
```

Upon the examination of appellee by counsel for petitioning creditors, the accounts and notes included in the item of $4,000 were called for, and promise was made to produce everything which appellee had pertaining to that item. It was then supposed that the papers were in Memphis, where the trial was being had. When the papers were again called for, the statement was made that appellee had found that the papers were not at his home (in Memphis), but were at the camp in Arkansas, and promise was made to go or send to the camp for them. Later, when respondent's counsel sought to examine him upon this item, the court, upon objection by counsel for appellants, refused to allow such examination until the notes and accounts were produced in court. Just before the close of the testimony, counsel for appellants again called for the papers. Appellee's counsel stated that it was impossible for appellee to leave during the trial of the case, as he was an essential party during the examination of the witnesses. He asked the court to adjourn the case to give an opportunity to send and get the papers. This the court declined to do, saying that respondent "ought to have had his papers here," adding:

"How a man would have an item of $4,000 or $5,000 and cannot put his hand on it, and that, too, when he is expected to be here with all his papers, does not strike me as such a condition of affairs as to allow a delay for his benefit."

Upon appellant's examination, the original notes, relating to the "obligation to Talley, due by Lee Cummins," were called for by counsel for appellants. The demand elicited the reply from counsel for respondent that "Mr. Barton (an attorney) says he thinks the original notes are in his files and he will go over and hunt them up and bring them over"; and, in reply, to a request to have them at once the response was made—"He has to walk over there in order to get them." They were not produced. At the close of the trial, when attention was again called to the subject in connection with appellants' claim that the appellee's refusal to produce his "books, papers and accounts" entitled appellants "to a direction that he is a bankrupt," no excuse for

the nonproduction of the note in question was given, unless it may be understood as in the same situation as the items included in "accounts and notes ($7,000) good, $4,000.00." At the conclusion of the testimony, the court was requested to instruct the jury that, respondent "having failed and refused" to attend with his books, papers, and accounts, the burden of proving his solvency rested upon him, and not upon the petitioning creditors. This request was refused, and the jury instructed that the burden of proof was upon the petitioning creditors to establish the fact of insolvency. In this we think the court erred. Section 3 (d) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3423]) provides that:

"Whenever a person against whom a petition has been filed as hereinbefore provided under the second and third subdivisions of this section takes issue with and denies the allegations of his insolvency, it shall be his duty to appear in court on the hearing, with his books, papers, and accounts, and submit to an examination, and give testimony as to all matters tending to establish solvency or insolvency, and in case of his failure to so attend and submit to examination the burden of proving his solvency shall rest upon him."

The books, papers, and accounts referred to are those material in determining the alleged bankrupt's financial condition. The existence and value of each item of the assets scheduled by the bankrupt was material to the inquiry. It is true that, excluding the items regarding which there was a failure to produce the existing vouchers, the respondent was solvent, provided his estimates of the value of his assets was accepted; but not so if the estimates produced by petitioning creditors were accepted. In Bogen v. Protter. 129 Fed. 533, 64 C. C. A. 63. it was held by this court that under the section referred to a merchant is required to produce such books, invoices, etc., as should properly be kept in his business and which are necessary to show the amount of his assets and liabilities; and that his failure to do so, without satisfactory explanation, casts upon him the burden of proving his solvency. It is true that the respondent's business was not such as to require him to keep books of account, and no question of the production of books is here involved. But we think the same rule applies to papers and accounts which an alleged bankrupt in fact has, and which are usually the best evidence of the existence, and frequently throw light upon the value of, the items of assets relied upon by him upon the question of insolvency. The evidence in this case does not indicate that there was any intentional refusal on the part of the respondent to produce the papers and accounts relating to the item in question, nor that his failure to do so was contumacious. But the statute does not require that failure be willful or contumacious in order to throw upon the bankrupt the burden, which is not a drastic one. of proving his solvency. The failure to make such production must be satisfactorily explained. Under the facts stated, the failure was not satisfactorily explained—and it follows that the burden of proof of solvency was by the statute thrown upon the alleged bankrupt.

[2] Counsel for petitioning creditors also presented requests for instructions to the effect that there should be disregarded in determining

the question of solvency the item of accounts and notes, $4,000, and the two items of corporate stock, by reason of the failure and refusal to produce the papers and accounts. We think this request was properly refused. Not only are we unable to see how the production of the certificates of the corporate stock, whose ownership does not seem to have been disputed, would throw any light upon the question of solvency, but the statute does not require the disregarding of items in the situation suggested. It merely shifts the burden of proof.

The same considerations dispose of a similar request regarding the claim against the Alabama Western Railway Company. In apparent reference to this claim, an instruction was asked that:

"Expectation and hopes of realizing upon some claim at some remote day are too uncertain to stand as property of value in balancing up the assets and liabilities of the alleged bankrupt."

We think the court was justified in refusing this instruction. There was testimony which, to our minds, justified the submission of the item in question to the jury, as an asset having value.

The remaining assignments relating to this branch of the case do not justify discussion. We content ourselves with saying that in our opinion no error is pointed out therein.

The additional plea before referred to alleged, in substance, first, that at the time the petition in bankruptcy was filed the respondent had more than 12 creditors and still had more than that number; that "his creditors (every creditor approached) except the petitioners (who have not been requested) have signed a paper writing objecting to the defendant being adjudged a bankrupt and agreeing that they will not participate in any effort to place defendant in bankruptcy," and, second, that since the petition for bankruptcy was filed the appellants here have "colluded and confederated together, in contempt and fraud of this court," to compel the alleged bankrupt to pay the claim of the third petitioning creditor (the Powder Company), at the risk of furnishing evidence of his own insolvency, to be used upon the trial of the hearing in bankruptcy in case of failure to pay such claim; that by such collusion the appellants here were permitted by the Powder Company to bring two suits upon the latter's claims against the alleged bankrupt in a court of a justice of the peace; that judgment upon such claims was obtained in the name of the Powder Company, through the refusal of the attorney for appellants to grant a reasonable time to prepare for trial; that appellee was prevented from taking an appeal from said judgments by the absence of the justice; that appellee, being thus without remedy, was forced to and did pay and satisfy said judgments and costs in the amount of about $1,500, the Powder Company being thus no longer a creditor; that there was thus not the requisite number of creditors petitioning for bankruptcy; that such failure of the requisite number was the result of the procurement of appellants; and that the latter cannot therefore be counted in reckoning the number of petitioning creditors. Motion was made to strike this special plea from the files "because the same is insufficient in law." The order of the court, referring to the motion to strike out the plea as "for insufficiency and for duplicity," and reciting the opinion of

the court that the plea "should stand and be treated as one of estoppel upon said Cummins Grocery Company and Jones and Rogers against their further prosecution of this suit, and as such should be replied to," overruled the motion. Five days later issue was joined upon the special plea, and on the same day an order was made allowing the Powder Company to withdraw from the further prosecution of the petition for bankruptcy and to receive from the justice of the peace the moneys paid in satisfaction of the Powder Company's judgments, upon the latter's agreement to refund to the trustee any excess received by it over the other creditors, should appellee be adjudged a bankrupt. The matters presented by the special plea were heard by the jury, in connection with the trial of the issue of solvency. The court submitted the questions, first, whether the number of petitioning creditors had been reduced below three by the procurement, consent, and connivance of the two remaining creditors; and, second, whether the appellee was or was not insolvent. The first question was answered in the affirmative. Appellee was found solvent. The order thereon has already been stated. The action of the court in overruling the motion to strike out the additional plea, and in submitting to the jury the issues raised thereby, is assigned as error. The assignment appears to be based solely upon the exception to the disallowance of the motion.

[3] It is enough to say of the objection of duplicity that whether or not it was well taken appellants have not been prejudiced by the inclusion in the plea of the defense that creditors had in writing objected to appellee's being adjudged a bankrupt and had agreed not to participate in any effort to that end; for on the trial the court excluded the evidence offered upon that issue. We think the plea raised a material issue. If the facts stated in the petition were true, appellants were, in our opinion, themselves estopped from prosecuting the petition for bankruptcy.

[4] After instituting proceedings for the administration of appellee's estate and the equal division of his property among all other creditors, they had, if the special plea is true, collusively harassed the alleged bankrupt with suits for the collection in full of a part of his indebtedness, in violation of the manifest spirit of the bankrupt act, and had forced the alleged bankrupt to devote a portion of his property to the payment in full of such indebtedness, with the result that the number of petitioning creditors was, by such collusion and procurement, reduced below the statutory number required. It is true that the court permitted the judgment creditor to receive payment upon the judgments and to withdraw from the proceedings only upon condition of agreement to refund a proper proportion of the recovery in case appellee should be adjudged a bankrupt; but appellants' attempted action was entirely inconsistent with the prosecution of the petition for bankruptcy and in plain violation of their duty to the court. The following cases illustrate the extent to which estoppels have been enforced against conduct by petitioning creditors inconsistent with the petition for bankruptcy. In re Fishblate Clothing Co. (D. C.) 125 Fed. 986; Lowenstein v. McShane Manf'g Co. (D. C.)

130 Fed. 1007; Moulton v. Coburn (1st Circuit) 131 Fed. 201, 66 C. C. A. 90.

[5] Appellants cannot be heard to complain that the Powder Company should not have been permitted to withdraw, because, first, such withdrawal was not objected to; second, if the special plea was true, appellants were responsible for the situation; and, third, the recovery of judgment and payment thereof to the justice estopped the Powder Company to proceed further as a petitioning creditor.

[6] It is true that appellee, upon his failure to perfect an appeal, elected (through his counsel) to pay the judgment (rather than seek remedy by certiorari) upon condition that the Powder Company would and could, on receiving such payment, withdraw from the proceedings, and that such withdrawal by the Powder Company was made in pursuance of such understanding, and thus with the final approval of appellee. It is also true that the money with which the judgment was paid was advanced by a friend of appellee. But we do not think such facts take away, as a matter of law, the effect otherwise occasioned by the alleged collusive suit, for the purpose charged, and the withdrawal of the Powder Company.

Error is also assigned upon the submission to the jury of the question of the truth or falsity of the additional plea, upon the ground that there is no evidence tending to show that the appellants, or either of them, took any part in the prosecution of the suits against appellee in the justice's court. We think, however, there was testimony from which the jury might properly find such participation.

[7] It is also urged that appellants could not be estopped from prosecuting the petition for bankruptcy because of the rule that, when the petition is once properly filed, it ceases to be the suit of the petitioning creditors alone, and that the latter cannot withdraw and leave the petition to be dismissed without notice and opportunity given to all other creditors to intervene and prosecute. Section 59d of the bankruptcy act provides that if the petition in bankruptcy alleges that there are less than twelve creditors, and less than three have joined as petitioners, and the answer avers the existence of a larger number of creditors, there shall be filed with the answer a list, under oath, of all the creditors with their addresses, and that thereupon the court shall cause all such creditors to be notified of the pendency of the petition, and shall delay the hearing thereon for a reasonable time to give the parties in interest an opportunity to be heard; and that if, prior to or during such hearing, a sufficient number shall join, the cause may be proceeded with or otherwise dismissed. Section 58a (8) provides that creditors shall have at least 10 days' notice by mail (unless they waive notice in writing) of the proposed dismissal of the proceedings. It is urged that the notices contemplated by the two sections referred to were not given, and that, therefore, the court had no authority to dismiss the proceedings. The record does not affirmatively show whether such notice was in fact given. We understand, however, from the briefs of counsel that it was not given. The reason presented by appellee for not giving such notice is that all the creditors except those who joined in the petition had in writing objected to appellee's being adjudged a bankrupt, and had agreed not to participate in any effort

to that end. If this is true, a notice of the proceedings to dismiss or opportunity to join in the petition would have been an idle ceremony. Comparison between the list of creditors supplied by appellee and the names upon the written objection referred to, as printed in the record, indicates that two of the listed creditors (aside from the original petitioning creditors and the alleged preferred creditor) did not sign the agreement. The Powder Company being allowed to withdraw, and appellants estopped from proceeding with the petition for bankruptcy, two other creditors would not have been sufficient to make a jurisdictional petition. But, in the first place, the case presented is not in terms brought within section 59d, because three creditors in fact joined in the petition for bankruptcy. But, assuming that the failure to give notice to creditors would have been reversible error if properly raised (In re Cronin [D. C.] 98 Fed. 584; In re Plymouth Cordage Co., 135 Fed. 1000, 68 C. C. A. 434; In re Tribelhorn, 137 Fed. 3, 69 C. C. A. 601), the question is not, in our opinion, properly raised here. The court had jurisdiction to act upon the plea and to dismiss the proceedings if in the judgment of the court such dismissal was warranted. Appellants made no objection to the proceedings to dismiss on account of lack of notice to other creditors, nor any application for delay to permit other creditors to join. It is quite possible appellants considered the hostile attitude of creditors generally toward the petition for bankruptcy as prohibitive of further interventions. No creditors in fact intervened. The statute does not, in our opinion, contemplate the giving of notice to other creditors after a hearing such as was had in this case. After going to hearing and judgment on the special plea, appellants cannot be heard to raise in this court for the first time the question of lack of notice to other creditors. Whatever rights other creditors might have to complain, we think complainants are not so entitled.

In our opinion, so much of the order as dismissed the proceedings should be affirmed. The order adjudging appellee not a bankrupt must be reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes