### GOLDEN HILL DISTILLING CO. v. LOGUE.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1917.)

No. 2995.

1. BANKRUPTCY ⊜═293(2)—VOIDABLE PREFERENCES—JURISDICTION OF COURT.
	Bankr. Act July 1, 1898, c. 541, § 23b, 30 Stat. 552, as amended by Act Feb. 5, 1903, c. 487, § 8, 32 Stat. 798, and Act June 25, 1910, c. 412, § 7, 36 Stat. 840 (Comp. St. 1916, § 9607), provides that suits by the trustee shall only be brought in the courts where the bankrupt might have brought them, if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under certain sections including section 60b (Comp. St. 1916, § 9644). Section 60b authorizes the trustee to avoid preferences and re-

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cover the property or its value, and provides that for the purpose of such recovery any court of bankruptcy and any state court which would have had jurisdiction, if bankruptcy had not intervened, shall have concurrent jurisdiction. *Held* that, since the amendment of 1910, the bankruptcy court has jurisdiction of a suit to recover a preference, regardless of the amount involved or the citizenship of the parties.

2. BANKRUPTCY ⬡⇒162—PREFERENCES—JUDGMENTS—"TRANSFER."

Under Bankr. Act July 1, 1898, c. 541, § 3, cl. 3, 30 Stat. 546 (Comp. St. 1916, § 9587), defining acts of bankruptcy, sections 60a, 60b, defining preferences and the right to recover them, sections 67c, 67f (Comp. St. 1916, § 9651), providing for the dissolution of liens obtained in legal proceedings, and section 1, cl. 25 (section 9585), defining a "transfer" as including the sale and every other and different mode of disposition of or parting with property or the possession of property absolutely or conditionally as a payment, pledge, mortgage, gift, or security, a creditor who recovers a judgment by consent or in invitum and by execution collects the judgment within four months preceding bankruptcy, and with reasonable cause to believe that a preference will result, receives a voidable preference, especially as, since the amendment of 1910, the debtor's intent is no longer relevant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transfer.]

3. JUDGMENT ⬡⇒707—CONCLUSIVENESS ON PERSONS NOT PARTIES.

The discharge of a receiver under a chattel mortgage on the property of a bankrupt, on a motion supported by affidavits tending to show that he was solvent, was not res judicata or binding on creditors or the trustee in a suit to recover a preference obtained a few days after such discharge.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit by James C. Logue, as trustee of Samuel Hornstein, bankrupt, against the Golden Hill Distilling Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Shortly before judgment was taken and a levy made, as stated in the opinion, a receiver was appointed under the mortgage on the bankrupt's stock and fixtures, and a few days later the receiver was discharged on a motion in support of which affidavits were introduced tending to show that Hornstein was not insolvent, but that his assets were considerably in excess of his liabilities.

Hornstein conducted a saloon in Cleveland. The Distilling Company was his chief creditor, having control of a chattel mortgage which covered all his tangible assets, and having, also, an unsecured debt of about $1,200, represented by a cognovit note. Its manager, Bayer, was generally familiar with Hornstein's affairs. Hornstein's only asset, not covered by the chattel mortgage, was his license, which had a transfer value of $2,500. After certain proceedings, which need not be recounted, the Distilling Company took judgment on the cognovit note and caused the tangible property to be seized on the chattel mortgage and a levy to be made by the sheriff upon Hornstein's interest in the license. The sheriff thereupon advertised this interest for sale. After the notice had been running about two weeks, Hornstein's wife was appointed his guardian, upon the ground of his mental incompetency, and she thereupon filed, in the court where the judgment had been rendered, a motion to set it aside, and obtained a preliminary injunction against the sale. Her claim was that the debt had been paid. Upon this claim, there was a hearing upon the merits. The court decided that no part of the debt was successfully impeached, and denied the motion and dissolved the injunction. Thereupon, and on the same day, the sheriff sold the license to a third person, and paid over to the Distilling Company the $1,200. On the next day, a petition in bankruptcy was filed and the remainder of the license price was

eventually turned over by the sheriff to the trustee in bankruptcy. The trustee filed, in the bankruptcy court, a petition against the Disilling Company, asking the recovery of this $1,200 as a preference, and asking, also, a judgment for the value of goods returned by Hornstein to the Distilling Company shortly before the collapse, alleging that this return of goods was a preference. Upon the petition, summons was issued, the Distilling Company answered and the issue was tried before the District Judge (a jury having been duly waived), and he made findings of fact and law and entered judgment for the trustee for both amounts sued for. The Distilling Company brings error.

Frank C. Scott, of Cleveland, Ohio, for plaintiff in error.

C. F. Taplin, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The Distilling Company claims that the court below had no jurisdiction of the issue presented by the petition and answer, because there was neither the requisite amount in controversy nor the requisite diverse citizenship to give jurisdiction to a United States District Court. This claim depends, primarily, upon the construction to be given the language of section 60b of the Bankruptcy Act, as that act was amended in 1903 and in 1910. After defining a voidable preference and giving the trustee the right to recover, the section since 1903 has said:

"And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

The construction which the Distilling Company urges is not inconsistent with the precise language used. This construction is that the phrase "which would have had jurisdiction," etc., applies to and modifies both the preceding "any court of bankruptcy" and the preceding "any state court." Clause 8 of section 1 defines "courts of bankruptcy," and the construction urged would, therefore, be to the effect that any United States District Court or the Supreme Court of the District of Columbia or the United States courts of Alaska or any state court could entertain a suit to recover a preference, provided such court would have had jurisdiction of the same controversy before bankruptcy. Very early after the passage of the act, it was held (Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175) that by the effect of section 23b, jurisdiction of a suit under section 60b was restricted (unless it was enlarged by consent) to those courts where the suit might have been brought if proceedings in bankruptcy had not been instituted. It is common knowledge that the effect of this holding was distinctly to interfere with that uniformity of administration which was one of the objects of the Bankruptcy Act, and it has been thought that the amendment of 1903 to section 60b was for the purpose of giving that breadth of remedy which Bardes v. Bank had denied. When sections 23b and 60b are construed together as if they were one, the substantial effect of the amendment was to insert the words "in any court of bankruptcy or" before the words "in courts where the bankrupt * * * might have brought or prosecuted." There remained, however, an apparent inconsistency. Section 60b, as

amended in 1903 and as thus construed, says that such a suit might be brought in any court of bankruptcy, while section 23b, declaring generally the jurisdiction, continued to say that it was limited to the courts where the suits could have been brought if there had been no bankruptcy. In 1910, this inconsistency was removed by an amendment of section 23b which expressly excepts from the generally limiting language of the section the suits authorized by section 60b. The same inconsistency as to section 70e (Comp. St. 1916, § 9654) was removed in the same way, at the same time.

It is clear to us that, at least since the amendment of 1910, there is no room to doubt the jurisdiction of the United States District Court in a controversy such as this. We have repeatedly affirmed judgments of the same character. Both in Bank v. Chicago Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051, and in Bush v. Elliott, 202 U. S. 477, 26 Sup. Ct. 668, 50 L. Ed. 1114, the court was considering cases which arose before the amendment of 1903.

[2] The Distilling Company next urges that the receipt by a plaintiff in execution of the amount of his judgment paid over to him by the sheriff from the proceeds of an execution sale, does not constitute a preference which is recoverable under section 60b. The argument is both that the judgment against Hornstein, after the exhaustion of the unsuccessful efforts made in his behalf, could no longer be said to have been "procured or suffered" by him, and that it is the intent of the section to legislate only against unsatisfied judgments without disturbing the status of the creditor who has, by execution sale, realized his judgment before bankruptcy petition filed. These two matters are sufficiently related to justify considering them together. We find no authoritative construction of the section in either particular, and we must determine its intent as best we may without such aid.

We find the subject of preference, resulting from legal proceedings, treated of by more or less similar language in at least three sections. Section 3, cl. (3), defining acts of bankruptcy, sections 60a and 60b, defining preferences and the right to recover them, and section 67c, providing for the dissolution of liens obtained in legal proceedings, all relate to the general purpose of securing equality among creditors and as against an effort of a creditor to collect by law on his own account. All three must be read together, and yet, it is quite impossible to bring them into detailed harmony. The preference, which is an act of bankruptcy, is only an execution levy or analogous lien which has been "suffered or permitted" to come into existence and which is allowed to continue until five days before the execution sale (Citizens' Bank v. Ravenna Bank, 234 U. S. 360, 34 Sup. Ct. 806, 58 L. Ed. 1352); the judgments regulated by section 60 are those which the bankrupt "procured or suffered" to be entered against him; and the liens reached by section 67c are invalid only if the lien was "sought and permitted" with the intent to work a forbidden preference. In Wilson v. City Bank, 84 U. S. (17 Wall.) 473, 21 L. Ed. 723, the court had to determine the validity, under the act of 1867 (14 Stat. 517, c. 176), of an execution lien existing in that form upon the property of the debtor at the time the petition in bankruptcy was filed, but it was necessary to consider both the provisions which defined an act of bankruptcy and

those which permitted the recovery of a preference. The conclusions of the court were:

"(1) That something more than passive nonresistance of an insolvent debtor to regular judicial proceedings, in which a judgment and levy on his property are obtained, when the debt is due and he is without just defense to the action, is necessary to show a preference of a creditor, or a purpose to defeat or delay the operation of the Bankrupt Act.

"(2) That the fact that the debtor under such circumstances does not file a petition in bankruptcy is not sufficient evidence of such preference or of intent to defeat the operation of the act.

"(3) That, although the judgment creditor in such case may know the insolvent condition of the debtor, his levy and seizure are not void under the circumstances, nor any violation of the bankrupt law.

"(4) That a lien thus obtained by him will not be displaced by subsequent proceedings in bankruptcy against the debtor, though within four months of the filing of the petition."

In Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147, the act of 1898 was involved. The sole question to decide was whether the judgment shown by that record had been "suffered or permitted" within the meaning of clause (3) of section 3. The judgment had been entered and the execution levy made without the consent or knowledge of the debtor, but by virtue of a cognovit note. The majority of the court held that such a judgment was to be deemed "suffered or permitted" within the meaning of this section; there were four dissenting judges adopting the contrary view. The opinion of the majority was based largely, if not essentially, upon the idea that by changing the language "procured or suffered," found in the act of 1867, and construed by Wilson v. City Bank, into "suffered or permitted," Congress had indicated its purpose that the active intent of the debtor to evade the equality of the Bankruptcy Act should no longer be the criterion, and that, therefore, the giving or allowing to continue the cognovit note which put it out of the debtor's power to resist the entry of a judgment when desired, was a sufficient suffering or permitting.[1] This decision is of no help in the present case, since section 60 retains the very language "procured or suffered" which was found in the act of 1867, and which, therefore, considered by itself, would ring the result of Wilson v. City Bank and not that of Wilson v. Nelson.

Turning, now, to the other branch of the contention, it must be conceded that there are, in sections 60a and 60b, no provisions which, in terms, reach the proceeds of a satisfied judgment, and that, since Wilson v. City Bank had ruled that under the act of 1867 the trustee could not recover such proceeds from the execution creditor, the clear expression of the contrary intent ought to be found in the act of 1898 before it should receive the contrary construction. It may also be said, according to the rule that things not specifically named in an enumeration are excluded, that the presence of provisions against the lien of a judgment and the omission of any mention of its proceeds raise a measure of presumption that the latter are not intended to be

---

[1] Wilson v. Nelson has been followed, if not extended, in Bradley Co. v. White (C. C. A. 5) 121 Fed. 779, 58 C. C. A. 55; Bogen v. Protter (C. C. A. 6) 129 Fed. 533, 64 C. C. A. 63; and Re Rung Co. (C. C. A. 2) 139 Fed. 526, 71 C. C. A. 342.

touched. The Supreme Court held, in Clarke v. Larremore, 188 U. S. 486, 490, 23 Sup. Ct. 363, 365 (47 L. Ed. 555), that where the proceeds of the execution sale were in the hands of the sheriff when the petition in bankruptcy was filed, the money should go to the trustee and not to the judgment creditor, but said:

"A different question might have arisen if the writ had been fully executed by payment to the execution creditor. Whether the bankruptcy proceedings would then so far affect the judgment and execution and that which was done under them as to justify a recovery by the trustee in bankruptcy from the execution creditor, is a question not before us, and may depend on many other considerations."

Several District Court opinions have held that such an execution judgment lien is not invalidated by section 67f, but have declined to consider whether the proceeds of the sale could be recoverable under section 60b.[2]

Can the payment of the proceeds of execution sale be thought such a "transfer" as is contemplated by the section? The word "transfer" is given a broad meaning by the statutory definition. Section 1, cl. 25. A money payment is within this generality of definition. Pirie v. Chicago Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. There is surely a transfer by operation of law; the property goes to the purchaser and the proceeds to the creditor; yet, there has not been that voluntary action naturally implied from the use of the word "made" (by the bankrupt).[3]

It must be confessed that the application of section 60b to the situation which we have described as arising in this case is not clear and certain, and we suspect that there can be no construction of these and the other sections mentioned which will not develop some inconsistencies and conflicts; but we conclude that the key is furnished by the amendment of 1910. Prior to that time it had been essential, in order to recover a preference under this section, to show that the debtor had intended to accomplish a preference in violation of the act. It was consistent with this theory that collection against him by legal proceedings was not condemned, unless they were by his procurement, and that a transfer was not voidable unless it had been "made" by him. When the amendment of 1910 provided that the debtor's intent was no longer relevant, but that the transaction might be avoided if the creditor had reason to believe that he was thereby getting a larger percentage than other creditors would receive, it destroyed the reason for longer requiring this voluntary participation by the debtor. The principle of the decision found in the majority opinion in Wilson v. Nelson, applies here; and since the intent and purpose of the debtor are made no longer important, the language used and that allowed to remain must

[2] Re Bailey (D. C.) 144 Fed. 214, 216; Re Resnek (D. C.) 167 Fed. 574; Nelson v. Svea Co. (D. C.) 178 Fed. 136, 140; Re Weitzel (D. C.) 191 Fed. 463.

[3] Whether the receipt of money on execution is a transfer within this section has been considered in the District Court, but not decided, in a case where there was no collusion. Re Blair (D. C.) 102 Fed. 987; Re Knickerbocker (D. C.) 121 Fed. 1004; Re Bailey (D. C.) 144 Fed. 214, 216; Dreyer v. Kicklighter (D. C.) 228 Fed. 744, 752; Grant v. Bank (D. C.) 232 Fed. 201, 217.

be construed to effectuate this result, however far from apt the words may be.

When we consider the three sections first named, as well as section 67f, we conclude that the general purpose of the act, in its present form, can only be effectuated, and that inconsistencies and uncertainties are best reconciled and clarified, by holding that the creditor who recovers a judgment, by consent or in invitum, and by execution sale collects his money within four months preceding bankruptcy, and with reasonable cause to believe, etc., receives a voidable preference, which he must repay to the trustee.

[3] The Distilling Company further contends that its agent, Bayer, had no sufficient reason to believe that the judgment or transfer would effect a preference, and this because he had no such reason to think Hornstein insolvent. The same reason is alone urged against the recovery for the goods returned on account. This presents only a question of fact. It is true that there had been a more or less formal judicial determination only a few days before that Hornstein was solvent; but this was, in no sense, res judicata, binding the creditors or the trustee, and the circumstances point strongly to the conclusion that Bayer must have reasonably anticipated that the assets were not enough to pay the debts. A review of the evidence pro and con would not be of value. It is enough to state our conclusion.

The judgment must be affirmed.