## HOLLISTER et al. v. OREGON HARDWOOD MILLS.

(Circuit Court of Appeals, Ninth Circuit. November -15, 1926.)

No. 4878.

1. **Bankruptcy ⇐91(2).**

Evidence warranting conclusion that president of corporation was engineering sale of assets for his own interest *held* to justify creditor's petition for adjudication of bankruptcy, under Bankruptcy Act, § 3a (3), being Comp. St. § 9587.

2. **Bankruptcy ⇐234.**

Under Bankruptcy Act, § 3a (3), being Comp. St. § 9587, debtor against whom petition for adjudication of bankruptcy has been filed must render reasonable assistance in determining financial condition.

3. **Bankruptcy ⇐91(1).**

Where president of corporation against whom petition for bankruptcy was filed under Bankruptcy Act, § 3a (3), being Comp. St. § 9587, showed hostility in aiding in determining financial condition, burden of proving solvency was on alleged bankrupt.

4. **Bankruptcy ⇐91(2).**

Alleged bankrupt corporation *held* to have failed to establish solvency by burden of proof, as required by Bankruptcy Act, § 3a (3), being Comp. St. § 9587, where bankrupt failed to properly furnish information of financial condition.

5. **Bankruptcy ⇐91(2).**

Creditors of corporation *held* entitled to adjudication of bankruptcy under Bankruptcy Act, § 3a (3), being Comp. St. § 9587, under evidence showing that only property of corporation was not worth amount of judgment for which officers were permitting it to be sold.

Appeal from the District Court of the United States for the District of Oregon; R. S. Bean, Judge.

Creditor's petition by M. Hollister and others, seeking an adjudication of bankruptcy against the Oregon Hardwood Mills. Judgment dismissing the petition, and petitioners appeal. Reversed, with directions.

W. E. Richardson, of Portland, Or., for appellants.

L. A. Recken and Benj. B. Goodman, both of Portland, Or., for appellee.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

KERRIGAN, District Judge. This is an appeal from an order and judgment of the District Court dismissing a creditors' petition and an amended petition filed by additional creditors of Oregon Hardwood Mills, a corporation, seeking an adjudication of bankruptcy against said corporation. The act of bankruptcy charged is under section 3a (3) of the act (Comp. St. § 9587), viz. suffering or permitting a creditor to obtain a preference through legal proceedings.

Upon the hearing of the original petition and amended petition, the special master ultimately found and reported that the petitioning creditors' claims aggregated $587.93, being sufficient in amount to confer jurisdiction; but he also reported "that there was no proof anywhere in the record" as to the solvency or insolvency of the alleged bankrupt at the date of the commission of the act of bankruptcy charged. After a careful consideration of the record we find ourselves unable to concur in this conclusion, and it presents the only question for review on this appeal.

[1] The record of the hearings discloses the following: Joseph H. Gill was president of the Oregon Hardwood Mills corporation, the affairs of which he dominated. In the year 1923 its plant was sold. The sale was a conditional one, and the plant was subsequently taken back, and was in the possession of the corporation at the time of the levy of an execution upon it under a judgment obtained by S. F. Williams, who caused the plant to be noticed for sale to satisfy his judgment, the date set being May 19, 1925. Failure to discharge the levy within five days of sale is the act of bankruptcy charged. The judgment was in excess of $3,000, and was

upon a claim assigned to Williams by Gill, being apparently for salary claimed by Gill to be owing to him by the corporation. The record before the special master, who took the evidence, while imperfect, shows that Gill testified that the plant was worth in excess of $5,000. When asked what consideration was paid by Williams for the assignment, he answered: ·

"That is none of your business. I have a right to give it to him, if I want to. I could give away my hat. It would be none of your business. Williams certainly owns that claim. The consideration for the claim is rent for the office down where I am.

"Q. For how long a period? A. Oh, for quite a long time.

"Q. State over what period of time. A. I can't remember."

Gill further testified that the only property owned by the Oregon Hardwood Mills was the plant in question and that it had been shut down for some time. An inventory of the property attached by the sheriff is set out in the record. It shows one dynamo, one cut-off saw, one trimmer saw, one edger, one main saw, one carriage, one lumber conveyor, and fifteen or sixteen miscellaneous items of equipment of a lumber mill. Witnesses called for the petitioners placed the value of this property at from $500 to $1,300. One of them, who worked for the corporation for six or eight months in 1922 or 1923, testified that one of the purposes of his·employment was to open a new set of books, but that he could not do this, because he was unable to make any sense out of the old books. The mill had not been operated since April, 1923, and the equipment was worn and to a great extent obsolete.

It thus appears that the entire plant owned by the corporation was advertised for sale on execution to satisfy a claim of $3,195 for salary of its president, assigned by him to Williams in payment of an alleged claim for rent owing by Gill to Williams, and covering a period of time that Gill could not remember. The latter's testimony is very unsatisfactory. The transaction itself is most questionable, and the conclusion is warranted that the president of the company was engineering the sale of all its assets in his own interest.

[2-4] Section 3 of the Bankruptcy Act reads: "Whenever a person against whom a petition has been filed as hereinbefore provided * * * takes issue with and denies the allegation of his insolvency, it shall be his duty to appear in court on the hearing, with his books, papers, and accounts, and submit to an examination, and give testimony as to all matters tending to establish solvency or insolvency, and in case of his failure to so attend and submit to examination the burden of proving his solvency shall rest upon him."

The testimony concerning the indebtedness owing and the claims of the original and intervening creditors clearly indicates that no reliable data were furnished by the corporation. The provisions of the act quoted obviously make it the duty of the debtor to render reasonable assistance in the manner indicated by furnishing information concerning his financial condition—being a matter peculiarly within his knowledge—in order to determine the question of his solvency or insolvency. Gill's testimony shows an attitude of hostility and obstruction. It is clear from the record before the special master that the burden of proof on this question was cast upon the alleged bankrupt and that it failed to discharge that obligation.

In the case of Bogen & Trummel v. Protter, 129 F. 533, 64 C. C. A. 63 (C. C. A. 6), the court says in respect of the quoted provision: "He must not only keep proper books of account, but preserve them, and produce them when called upon," in order to be relieved of the burden of proof as to his financial condition.

[5] The evidence is conclusive that the property is not worth the amount of the judgment for which Gill was permitting the plant to be sold. It is the only reasonable inference from Gill's testimony that, as the plant had been idle for a long time, it was worth little or no more at the time of the levy than at the date of the hearing, and it is perfectly apparent from the record that the other witnesses as to value were testifying to a condition which existed, not only on the date they testified, but for some time prior thereto. Petitioning creditors' claims aggregating $587.93 existed at the time of the levy. The plant not being worth the amount of the Williams judgment—which as to the corporation on this hearing must be regarded as valid—nothing remained out of which those claims could be paid.

The judgment is reversed, with instructions to enter an adjudication as prayed.