## In re WILSON.

## WILSON v. WILSON et al.

(Circuit Court of Appeals, Seventh Circuit.
December 23, 1926.)

### No. 3763.

1. **Appeal and error ⟨⟩640—Appeal will not be dismissed for failure to condense evidence in transcript, where facts are sufficiently shown in master's report (equity rule 75).**

Appeal will not be dismissed for failure to condense evidence in transcript, and reproducing pleadings and other papers in other cases, in full in violation of equity rule 75, where facts are sufficiently shown in master's report to enable appellate court to consider questions.

2. **Bankruptcy ⟨⟩91(1)—Presumption of insolvency, from refusal to produce books or testify, may be rebutted by evidence (Bankruptcy Act, § 3 [Comp. St. § 9587]).**

Under Bankruptcy Act, § 3 (Comp. St. § 9587), alleged bankrupt, who refuses to produce his books or testify, is presumptively insolvent; but burden of proving contrary may be sustained by evidence rebutting presumption.

3. **Evidence ⟨⟩18—Court judicially notices that farm lands and distillery stocks depreciated in value between January 1, 1922, and end of 1924.**

Court may judicially notice that farm lands and distillery stocks were particularly subject to depreciation in value during years from January 1, 1922, to end of 1924.

4. **Bankruptcy ⟨⟩91(2)—Burden of proving solvency is not sustained by showing solvency 2½ years before acts of bankruptcy (Bankruptcy Act, § 3 [Comp. St. § 9587]).**

Burden on alleged bankrupt, under Bankruptcy Act, § 3 (Comp. St. § 9587), of proving solvency at time of alleged acts of bankruptcy, is not sustained by showing solvency 2½ years before.

5. **Evidence ⟨⟩158(12)—Report of audit, based on bankrupt's books, which he refused to produce, held inadmissible as secondary evidence.**

Where alleged bankrupt refused to produce his books and accounts at hearing, report of audit of his financial condition, based on such books, was inadmissible on his behalf as secondary evidence.

6. **Bankruptcy ⟨⟩91(1)—Evidence held insufficient to rebut presumption of insolvency of bankrupt, who refused to submit to examination (Bankruptcy Act, § 3 [Comp. St. § 9587]).**

Evidence *held* insufficient to sustain burden of proving solvency, under Bankruptcy Act, § 3 (Comp. St. § 9587), on alleged bankrupt, who refused to produce books or testify at hearing.

7. **Bankruptcy ⟨⟩59, 60—Permitting levy on judgment without discharging it, and application for receiver, held sufficient acts of bankruptcy to authorize involuntary proceeding.**

Insolvent debtor's transfer to creditor of property worth $1,700, permitting judgment to

16 F.(2d)—12

be entered, and execution to be levied thereon without discharging it, and application to state court for appointment of receiver, *held* sufficient acts of bankruptcy to authorize involuntary bankruptcy proceeding.

8. **Bankruptcy ⟨⟩76(1)—Pendency of suits in other jurisdictions, attacking notes, held not to affect provability of notes, as affecting right to petition as creditors.**

Pendency in other jurisdictions of suits attacking transactions in which alleged bankrupt gave notes secured by trust deed *held* not to affect provability of notes as claims in bankruptcy, as affecting right to petition as creditors.

9. **Bankruptcy ⟨⟩76(2)—As respects right to petition as creditors, notes on which unpaid interest exceeded statutory minimum for involuntary bankruptcy were provable in bankruptcy, where security was waived.**

As respects right to petition as creditors, notes on which matured unpaid interest exceeded statutory minimum for involuntary bankruptcy were provable in bankruptcy, where security for notes was waived in favor of bankrupt estate.

10. **Bankruptcy ⟨⟩76(3)—That attorneys representing holders of notes on which involuntary petition was based represented holders in other proceedings involving notes held not to estop holders.**

That attorneys representing holders of notes forming basis of involuntary bankruptcy petition represented holders in actions in other jurisdictions involving transactions on which notes were given *held* not to estop holders from asserting notes as basis for involuntary petition.

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

In the matter of Everett W. Wilson, bankrupt. From an adjudication of bankruptcy on the petition of Fred L. Wilson and other creditors, the bankrupt appeals. Affirmed.

C. C. Le Forgee, of Chicago, Ill., for appellant.

I. J. Covey, of Peoria, Ill., for appellees.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ALSCHULER, Circuit Judge. The appeal is from an order adjudicating Wilson a bankrupt, on petition of three creditors. Wilson denied insolvency and commission of the alleged acts of bankruptcy. The issues were referred to a special master, to take the evidence and report the same back to the court, with his conclusions of fact and law.

[1] Appellee moved for dismissal of the appeal for appellant's failure to condense the evidence and proofs in accordance with equity rule 75. The transcript certainly does set the rule at defiance, not only as to the oral tes-

timony, but also as to the 400 printed pages, reproducing in full pleadings, orders, opinions, affidavits, etc., in cases pending and undetermined in other courts, involving in the main attacks there by Wilson upon the agreement out of which arose the notes whereon the petitioning creditors base their claims, and on the notes as well. It is quite apparent that the voluminous transcript here presented is five or six fold larger than was reasonably necessary to present the questions here involved. However, it appears that the salient facts are sufficiently shown in the master's report to enable us to consider the questions which the appeal involves, the controlling questions involving deductions from the facts rather than the facts themselves.

[2] Insolvency, which in appellant's brief is termed "the big question in this case," appears, if at all, rather by inference than by direct evidence of it. On the hearing, Wilson, the alleged bankrupt, refused to submit to examination or to testify, or to produce his books, papers, and accounts. Section 3 of the Bankruptcy Act (Comp. St. § 9587) provides:

"In case of his failure to so attend and submit to examination, the burden of proving his solvency shall rest upon him."

In their brief counsel for bankrupt say:

"The proposition of law made by petitioner, that because Wilson did not produce his books and testify the burden as to his solvency shifted under the statute, is well taken; but that simply means that the burden of proving solvency rests on Wilson, and, if he proves it by competent evidence, whether he produces his books or not, or testifies or not, then upon such proof he cannot be adjudicated a bankrupt."

This correctly states the situation, and it follows that upon such refusal the presumption of insolvency attaches, subject, of course, to be rebutted by evidence of solvency sufficient to overcome it.

[3, 4] Appellant's main reliance is upon the report of an audit of his financial condition, made by one Colby, whom Wilson had employed as auditor of the American Distilling Company, of which Wilson was president, and who made an audit also of the financial condition of the members of the company, whose finances were involved with those of the company. The audit in question purports to be as of January 1, 1922, whereas the petition in bankruptcy bears date September 22, 1924, and charges acts of bankruptcy committed from June 3, 1924, to August 11, 1924. In the intervening time all sorts of things may have occurred to deplete Wilson's assets and

swell his liabilities. Indeed, it might be judicially noticed that farm lands and distillery stocks, whereof his property largely consisted, were in those years particularly subject to depreciation in value.

Apart from the element of depreciation, it appears that during that period, but more than 4 months prior to the bankruptcy, he conveyed to his children large amounts of his farm property, estimated to be worth about $400,000, and also conveyed away his large distillery stockholdings. Whether he then had left other property in considerable amount does not appear from evidence of those who knew the facts. If he had a large surplus of assets at the time of the audit, it does not necessarily follow that he had it 2½ years thereafter. The burden of proving his solvency at the times of the alleged acts of bankruptcy is not sustained by showing solvency 2½ years before.

[5] Colby says he made the audit from Wilson's books, so far as they showed the facts. But, if every item thereof were taken from the books, may an alleged bankrupt deliberately decline to testify and to produce his books, and then sustain his burden of showing solvency by the evidence of some one whom he had previously employed to examine the books? If he may do this, he could withhold his books and accounts and his own testimony, and yet have the full benefit of the books through the testimony of some one who saw them. With the absent books and accounts within the power of Wilson to produce, the report of the audit was clearly secondary evidence, and the objection to its admission should have been sustained.

[6] But, apart from this, Colby, whose testimony alone identified the report, did not personally know it was true, particularly as to the valuations, for which he says he accepted Wilson's statements to him. When it is considered that about 90 per cent. in value of the total assets shown in the report is in the item "real estate and farm properties, $1,294,255.02," the estimates for which were given to Colby by Wilson, it is evident that the report as to the assets is, in the main, only Wilson speaking through Colby. There is little else, except some evidence as to a few items of his property, but none as to his liabilities, a subject which, generally speaking, is peculiarly within his own knowledge. Refusing to give evidence thereon, by way of his testimony, books, or papers, and no evidence of his liabilities appearing, he has not sustained the burden of proving his solvency, which could appear only through evidence of his assets and liabilities at the times in question.

As bearing on the question of solvency we may state what is quoted in the master's report from a bill in chancery which Wilson filed in the circuit court of Putnam county, Ill., January 14, 1924, involving his financial relations with the distilling company and others:

"That under the terms of the pretended contract [a contract of March 6, 1923, which is assailed in said bill] your orator is deprived of each and every of his various assets, and is without means to meet the said indebtedness or any part thereof."

In this state of the record we are not at liberty to disturb the finding of the master and the holding of the court to the effect that Wilson did not sustain his statutory burden of proving solvency.

[7] The other issue which is specifically made by Wilson's answer to the petition is as to the acts of bankruptcy charged, of which there were five: (1) Payment of the grocery bill of $277.66; (2) transfer to a creditor bank of corn worth $1,700; (3) suffering judgment to be entered against him for $5,400, and execution thereon to be levied on his personal property, and not discharging the same within five days of date set for sale thereunder; (4) applying to a court of competent jurisdiction for the appointment of a receiver for all his property; and (5) the appointment of such receiver—all while he was insolvent and within four months of filing the petition.

The first four grounds were sustained by the master's report and by the court, although the report stated that the first ground was sustained only in its connection with the second, third, and fourth. Without detailed discussion of these three grounds, we think it plain that, assuming the insolvency, the record sufficiently shows them to be acts of bankruptcy. While there might be some question of the second, respecting the element of intended preference, the third and fourth seem clear enough. In the judgment and impending sale under execution thereon are found all the statutory elements of such an act of bankruptcy, and the fourth act alleged is sustained by the proof that in the Putnam county suit, above referred to, wherein he seeks to set aside various notes and the conveyance of much of his property as security for their payment, he applied for appointment of a receiver for all his property.

[8, 9] But it is contended that the claims of petitioners were not provable in bankruptcy, and that petitioners are estopped from asserting them as basis for such petition. While the answer does not set up these contentions, we will nevertheless notice them. The debts are manifested by Wilson's notes, all dated March 6, 1923, and due January 1, 1926—one for $5,000, bearing 4 per cent. interest; one for $5,273, at 6 per cent.; and one for $5,216.91, at 6 per cent.; all interest payable annually. A year's interest was due and unpaid at date of petition. The notes held by petitioners, respectively, were part of those given in the adjustment of financial relations between Wilson and the American Distilling Company; Wilson's trust deed on part of his property having been given to secure such notes, aggregating about $175,000. The transaction resulting in the notes and security was attacked by Wilson in Putnam county and in other jurisdictions, and the hotly contested suits are pending in the courts where brought.

The pendency of the suits did not make the notes any the less provable claims in bankruptcy. They could have been attacked in the bankrupt court, but this was not undertaken. The matured interest exceeded the statutory minimum for involuntary bankruptcy, and, the security for the notes having been waived in favor of the bankrupt estate, we can see no valid objection to their provability in bankruptcy.

[10] The estoppel contended for is sought to be gathered from the other court proceedings above referred to. It is insisted they disclose some relation of or acts by the petitioners inconsistent with their standing as petitioning creditors. It is pointed out that their attorneys are the same as those who are resisting these other court actions brought by Wilson. This might be a circumstance which, with others, might estop petitioners. But no other circumstances are disclosed, nothing which would indicate that petitioners connived at or assisted in the commission by Wilson of the acts of bankruptcy—the transfer of the corn; the impending sale on execution; the application for receiver for all his property. Such conduct might estop petitioners from asserting bankruptcy. Simonson v. Sinsheimer (C. C. A.) 95 F. 948. But such does not here appear.

Upon the facts disclosed the adjudication of bankruptcy cannot be disturbed, and it is hereby affirmed.