**In the Matter of EASTERN SUPPLY COMPANY, a co-partnership consisting of Munroe E. Greene and Joseph Blonstein, Partners.**

**No. 22947.**

United States District Court
W. D. Pennsylvania.
Aug. 1, 1961.

See also 170 F.Supp. 246.

**360**

Meyer W. Gordon, Rothman, Gordon & Foreman, Pittsburgh, Pa., for Eastern Supply Co., bankrupt.

Harry R. Levy, Pittsburgh, Pa., for creditors.

MARSH, District Judge.

On July 23, 1958, certain creditors of Eastern Supply Company, a co-partnership consisting of Munroe E. Greene and Joseph Blonstein, partners, filed a creditors' petition in this court of bankruptcy seeking to have the partnership adjudged a bankrupt. The petition alleged that the partnership committed the fifth act of

bankruptcy "in that it did heretofore, to-wit, on the 24th day of March, 1958, while insolvent, or unable to pay its debts as they matured, permitted or suffered voluntarily or involuntarily, the appointment of a Receiver to take charge of its property in the proceedings in The Court of Common Pleas of Allegheny County * . * *." 1

The partnership denied the allegation and demanded a jury trial.

On April 20, 1960, a judge, the writer of this opinion, referred the matter to the Referee in Bankruptcy at Pittsburgh, Pennsylvania, to conduct the jury trial.[2] No objection to this order was made to the referring judge.

At the conclusion of the petitioning creditors' case in the jury trial conducted by the Referee, the partnership moved for a directed verdict. This was refused and the partnership offered no defense and rested.

The following question was submitted to the jury and answered by it in the affirmative:

> "Did the appointment of Receivers on March 24, 1958, by the State Court occur while Eastern Supply Co. was unable to pay its debts as they matured?" [3]

On June 16, 1960, the Referee filed an Order adjudicating the partnership a bankrupt.

On June 17, 1960, the partnership filed a motion to set aside the verdict and have judgment entered in accordance with debtor's motion for a directed verdict and a motion for a new trial.

Both motions were denied by the Referee in a Memorandum and Order. Subsequently, the partnership filed the peti-

---

1. The Bankruptcy Act provides:
   "§ 21. Acts of bankruptcy
   "(a) Acts of bankruptcy by a person shall consist of his having * * * (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property * * *."
   11 U.S.C.A. § 21, sub. a(5).

2. This order was made prior to the publication on or about July 1, 1960, of the Resolution of the Judicial Conference of the United States held on March 10 and 11, 1960, disapproving this practice.

3. At the trial, the creditors did not attempt to prove that the partnership was insolvent in the bankruptcy sense.

tion for review presently under consideration.

Argument was duly held and briefs submitted. At a supplemental hearing held on June 22, 1961, counsel for the partnership indicated that he was relying on one point and one point alone in his petition for review, and that all other points raised by the petition and in his previous motions before the Referee were abandoned. One of the points previously raised was that the Referee had no authority to conduct a jury trial. At the supplemental hearing counsel for the partnership specifically withdrew this objection, indicated that he no longer wished to press it, and refused the court's offer to grant a new trial.[4] The petitioning creditors maintain, and the Referee held, that the Referee has statutory authority to conduct a jury trial.

Thus the sole question before the court now is whether there was sufficient evidence from which a jury could reasonably infer that on March 24, 1958, when the State Court Receivers were appointed, the partnership was unable to pay its debts as they matured, that is to say, as the partnership contends, that the assets of the partnership and of the individual partners available for partnership debts were insufficient to pay partnership debts as they matured. Cf. Francis v. McNeal, 3 Cir., 186 F. 481, affirmed 1913, 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed. 1029.

It is clear that in considering a motion for a directed verdict "that the sole question [is] one of law whether plaintiff's evidence and all the inferences fairly to be drawn from it in a most favorable light made out a prima facie case for relief * * *." O'Brien v. Westinghouse Electric Corporation, 3 Cir., 1961, 293 F.2d 1, 8.[5]

█ In our opinion the evidence met this standard. Since a transcript of the trial was not furnished, we rely on the deposition of Louis H. Lewis which was read to the jury and on excerpts of evidence cited by the Referee in his Memorandum of November 17, 1960, the accuracy of which excerpts have not been disputed by the partnership.

The Referee states:

"During the trial petitioning and intervening creditors offered testimony of representatives of three creditors of the bankrupt partnership. One was owed Two Thousand Twenty-one and 87/100ths ($2,-021.87) Dollars; another Eight Thousand Six Hundred Three and 23/100ths ($8,603.24) [sic] Dollars and the third was owed Twenty-three Thousand Nine Hundred Ten and 78/100ths ($23,910.78) Dollars. All testified that demand was made and payment was refused at one time or another prior to March 24, 1958, the date of the appointment of the State Court Receivers. One testified that on one occasion when he demanded payment he was told by the partners that their money was all tied up in inventory."

And he further states:

"In addition depositions were read into the record on behalf of other creditors and in one instance * * Louis H. Lewis, a partner of Furst and Furst Co. a commercial collection agency, which represented several other creditors was asked and answered the following:—

"Q. State what efforts were made by Furst and Furst toward collection of these accounts. A. Form demand letter sent by mail on each account. On behalf of Astra Trading Corporation a phone call was made to debtor company on March 9, 1958 and a man who identified himself as Joseph Blonstein advised

4. See transcript of supplemental hearing of June 22, 1961, pp. 4–8.

5. Other considerations appropriate to the motion for a new trial raised before the

Referee, including alleged inadequacy of the charge, refusal of petitioner's points for charge, and any variations between allegata and probata, are not involved in this review.

me that the Company did not have the money to pay its obligations."

Since the creditors were trying to prove that the partnership was insolvent in the equity sense, i. e., that the partnership was unable to pay its debts as they matured, the available assets to be considered by the jury were cash and other liquid assets as distinguished from real estate and other frozen assets. Consequently, the above-quoted excerpts clearly show that there was direct evidence that the partnership was unable to pay its debts as they matured, and inferentially that the individual partners had insufficient cash or other liquid assets available to pay partnership debts as they matured.

We think the inference finds reasonable support in the undenied admission of the partners that their money was all tied up in inventory, and in the testimony of one of the State Court Receivers who, according to the Referee's Memorandum, "testified to the effect that the indebtedness when he took over on March 24, 1958, was * * * $335,603.45 * * * and that in the State Court proceedings a dividend of 15% was paid to creditors."

■ Insolvency in the equity sense may be established by inference. Cf. In re Wilson, 7 Cir., 1926, 16 F.2d 177.

We do not see how the partnership can effectively argue, on the one hand, that before a partnership can be found unable to pay its debts as they mature, it is necessary to consider the assets of each member of the partnership because, as the partnership so strenuously argues, a partnership is in law and reality simply the aggregate of its members, and each member is liable for all partnership debts; and, on the other hand, contend that a statement by the partners themselves that their money was all tied up in inventory, corroborated, incidentally, by payment of only 15% on the dollar to creditors, is insufficient evidence, prima facie, from which to base a finding that the partners, *individually,* as well as the

partnership, did not have sufficient money available to meet partnership obligations as they matured.

Materially strengthening the creditors' prima facie case and presenting a more compelling reason for affirming the adjudication of the Referee was the failure of the partnership to produce complete records, books, papers, and accounts and give testimony relative to the financial condition of the partnership as of March 24, 1958.[6]

Appearing in the Referee's Memorandum is the following testimony by Mr. Greene, one of the partners, upon being asked if he knew what the liabilities of the partnership were as of January 1, 1958: "No, I haven't seen records or books in two years." It further appears that he was unable to testify from personal knowledge as to the indebtedness of the partnership as of March 24, 1958, instead "he indicated all his records were in court." The Referee states that voluminous records and books were produced in court "which purported to be all the records of the bankrupt partnership to the end of December 1957", concerning which Mr. Greene testified "that no entries were made in the last ledger after December 1957 up to March 24, 1958."

From the foregoing, the accuracy of which has not been challenged by the partnership, it seems clear that the books, papers and accounts of the partnership were not complete as of March 24, 1958, —the crucial date with respect to the partnership's ability to pay its debts as they matured. It also seems clear that partner Greene was not sufficiently familiar with the financial condition of the partnership to be able to "give testimony as to all matters tending to establish * * * [the] ability or inability to pay his [the partnership's] debts as they mature." Section 3, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. d.

The failure of the partnership to keep up-to-date books, and the failure of the partner Greene to produce informative

6. Only one partner, Greene, attended the trial; the presence of Blonstein, the partnership contends, was waived.

testimony about its financial condition, imposes upon the partnership the burden of proving solvency and ability to pay its debts as they mature. Cf. Standard Outfitting Co. v. Heyker, 6 Cir., 1928, 27 F.2d 229.

Section 3, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. d, provides in part as follows:

"Whenever a person against whom a petition has been filed alleging the commission of the * * * fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing * * * with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, *in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him.*" (Emphasis supplied.)

In Collier on Bankruptcy, 14th ed., vol. 1, ¶ 3.208, pp. 441–442, it is stated:

"If the bankrupt refuses to appear with his books, papers, and accounts for examination, *then the burden of proving his solvency at the time of the transfer is shifted to him.* It is no excuse that a debtor engaged in business kept no books, or that he has lost them; if he does not keep them or know where they are, the burden will rest on him to show that he was solvent. The statute does not require that the failure to produce books and papers be wilful or contumacious in order to throw upon the bankrupt the burden of proving his solvency; the failure to produce, and the absence of a satisfactory explanation is sufficient. The books, papers and accounts referred to are those material in determining the bankrupt's financial condition at the time of the transfer." (Emphasis supplied.)

Although the editors were here referring to the application of § 3, sub. d in determining the burden of proof under the second act of bankruptcy, § 3, sub. d applies as well to the fifth act except that the "books * * * referred to are those material in determining the bankrupt's financial condition at the time * * * *" of the appointment of a receiver.* Because of the incomplete and unsatisfactory condition of the partnership books, papers and accounts, we think the burden shifted to the partnership and it was incumbent upon the partners to prove that the partnership, or one or both of the individual partners, had liquid assets available to pay partnership debts as they matured. This was not done; the partnership submitted books and one partner testified, but the books and testimony were far from meeting the requirements to avoid the burden imposed by § 3, sub. d.

In the case of In re Cayne Const. Co.; D.C.E.D.N.Y.1932, 58 F.2d 664, 665, the court stated:

"The Cayne Construction Company, Inc., failed to produce *satisfactory* books of account * * *.

"In view of the failure of the bankrupt to produce *adequate* books of accounts or to account satisfactorily for missing data from which an accurate and independent statement of its condition could be arrived at, the burden to prove solvency rests upon the bankrupts. Bogen & Trummel v. Protter (C.C.A.) 129 F. 533." (Emphasis supplied.)

In the case of In re Wilson, supra, 16 F.2d at page 178, the court in speaking of the effect of the bankrupt's refusal to, inter alia, produce his books, papers, and accounts and of the consequent shifting of the burden of proof (as herein previously set forth) stated:

"This correctly states the situation, and it follows that upon such refusal *the presumption of insolvency attaches,* subject, of course, to be rebutted by evidence of solvency sufficient to overcome it." (Emphasis supplied.)

■ We believe that the unexplained failure of the partnership and the individual partners to maintain and produce at the trial *adequate* books and accounts, or informative testimony, from which an accurate determination of the financial condition of the partnership as of March 24, 1958, could be made, shifted to the partnership the burden of proving that the partnership had sufficient money available to pay, as of that date, the partnership debts as they matured, and created a presumption of insolvency in the equity sense which in the absence of proof to the contrary by the partnership and its partners was sufficient in itself to justify the special verdict. Indeed, when the partnership decided not to offer any evidence in defense, had an appropriate motion been made, the Referee might well have directed a verdict in favor of the petitioning creditors. In any event, there was sufficient evidence to sustain the jury's verdict.

The Order of the Referee dated November 17, 1960, will be affirmed.