R. H. BERG et al., Appellants,

v.

Charles E. HOPPE, Assignee of Pacific Telephone and Telegraph Co., et al., Appellees.

No. 19317.

United States Court of Appeals Ninth Circuit.

Nov. 3, 1965.

David Freidenrich, Adams, Freidenrich & Ware, Palo Alto, Cal., Thorne, Stanton, Clopton, Herz & Stanek, San Jose, Cal., for appellants.

Henry Cohen, San Francisco, Cal., John J. Hayes, Jr., Robert J. Mezzetti, San Jose, Cal., Shapro, Anixter & Aronson, Burlingame, Cal., for appellees.

Before BARNES, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This appeal is taken from a district court order entitled "Order Regarding Order to Show Cause and Certification of Respondents to this Court for Contempt." This order issued as a result of appellants' refusal to comply with a directive to file schedules and statements of affairs in advance of the trial of an involuntary Bankruptcy petition brought against appellants by certain of the present appellees. The jurisdiction of the district court was based upon 11 U.S.C. § 11. We have the authority to review that court's order pursuant to 11 U.S.C. § 47, sub. a.

On April 22, 1963, three petitioning creditors filed an involuntary petition in bankruptcy against the appellants. Before adjudication the creditors filed a notice of motion to require the appellants to file their schedules of assets and liabilities and statements of affairs. The referee ordered the appellants to file their schedules of assets and liabilities and their statements of affairs within ten days. They failed to do so.

The referee ordered the alleged bankrupts to appear before the court below to show cause why they should not be adjudged guilty of contempt. Following a hearing, the court below made an order reading in part as follows:

"* * * respondents are hereby ordered to comply with the order of the Referee dated September 10, 1963, by filing, on or before March 12, 1964, their respective schedules of assets and liabilities and their respective statements of affairs as of the date of the filing of the petitions in bankruptcy.

"This Court withholds, until after March 12, 1964, its ruling with regard to the failure of respondents to comply with the Referee's Order to Show Cause dated October 29, 1963."

We are of the opinion that the referee had no authority to make the order that he made and that therefore the court's order must be reversed.

The "schedules" and "statement of affairs" are provided for by section 7 of the Bankruptcy Act, 11 U.S.C. § 25, and particularly clauses (8) and (9) of subsection a. The pertinent provisions are:

"(a) The bankrupt shall  *  *  *  (8) prepare, make oath to, and file in court *within five days after adjudication, if an involuntary bankrupt, and with his petition, if a voluntary bankrupt,* a schedule of his property, showing the amount and kind of property, the location thereof and its money value, in detail; and a list of all his creditors, including all persons asserting contingent, unliquidated, or disputed claims, showing their residences or places of business, if known, or if unknown that fact to be stated, the amount due to or claimed by each of them, the consideration thereof, the security held by them, if any, and what claims, if any, are contingent, unliquidated, or disputed; and a claim for such exemptions as he may be entitled to; all in triplicate, one copy for the clerk, one for the referee, and one for the trustee: *Provided, however,* That the court may for cause shown grant further time for the filing of such schedules if, with his petition in a voluntary proceeding or with his application to have such time extended in an involuntary proceeding, the bankrupt files a list of all such creditors and their addresses; (9) file in triplicate with the court at least five days prior to the first meeting of his creditors a statement of his affairs in such form as may be prescribed by the Supreme Court." (Emphasis added.)

Under the Act, the first meeting of creditors is held not less than ten days after adjudication. (§ 55, 11 U.S.C. § 91). Thus, under the express terms of the Act, an alleged bankrupt, not adjudicated, is not required to prepare or file either a schedule or a statement of affairs.

The provisions of clauses (8) and (9) have been implemented by the General Orders in Bankruptcy. General Order

38 (11 U.S.C.A. following section 53) prescribes the use of certain forms. Among them are Schedule A, Statement of All Debts of Bankrupt, Schedule B, Statement of All Property of Bankrupt (these being a portion of Form 1), and Form 3, Statement of Affairs. Even a cursory examination of them will show that their preparation by one having substantial business affairs requires considerable work and expense. Schedule A requires him to list all debts having priority, all creditors holding securities, all unsecured creditors, all contingent liabilities, and all accommodation paper. The form on which priority creditors are to be listed requires, as to each, a reference to the ledger or voucher of the bankrupt, the name of the creditor, his residence, when and where the debt was incurred or contracted, whether the claim is contingent, unliquidated, or disputed, the nature and consideration of the debt, and whether incurred or contracted as partner or joint contractor, and if so, with whom. Equally detailed information is required as to each of the other types of creditors. The statement of all property of the bankrupt consists of schedules in which he is to list his real estate, personal property, choses in action, property in reversion, remainder, or expectancy, and property claimed exempt, all in comparable detail. He is also required to list, in detail, his books, papers, and writings relating to his business and estate, and to complete a summary of his debts and assets based upon the preceding schedules. The statement of affairs for a debtor engaged in business is three pages long and contains numerous questions under fifteen headings.

█ Section 7 deals solely with the duties of a bankrupt, and imposes duties upon him relating to the efficient ad-

ministration of his estate by the bankruptcy court. It is not a "discovery" statute. The section begins with the words "The bankrupt shall" and then lists eleven obligations, each of which relates to his participation in, and assistance to the court in, the administration of his estate. The information required in the prescribed forms is essential to the administration of a bankrupt estate, but much of it has little if any relevance to the question of solvency, which is the issue to be tried in this proceeding to have the appellants declared involuntary bankrupts. Nothing in section 7 of the Act purports to require the preparation and filing of any of these documents by one who is defending an involuntary bankruptcy petition. We think that the use by Congress of the language that it used was deliberate. Forms 1 and 3 were not intended to be used for discovery purposes in connection with the trial of a petition to have a party adjudicated an involuntary bankrupt.

Section 3, sub. d of the Act (11 U.S.C. § 21, sub. d),[1] on which appellees rely, contains no language upon which one can predicate a requirement that the alleged involuntary bankrupt, before being adjudicated, shall prepare and file these schedules and forms. On the contrary, the only thing that it requires is that the alleged bankrupt shall appear in court on the hearing, or prior thereto if ordered by the court, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency. This provision has now been supplemented by section 21 of the Act as amended (11 U.S.C. § 44), and particularly subdivision k, which expressly make applicable to bankruptcy proceedings the discovery proceedings provided for in the Fed-

---

1. "(d) Whenever a person against whom a petition has been filed alleging the commission of the second, third, or fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing, and prior thereto if ordered by the court, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

eral Rules of Civil Procedure. (In re Shulund, D.Mont., 1962, 210 F.Supp. 195) There is nothing in those rules under which an order could be made requiring the alleged bankrupt to complete the schedules and forms that these parties have been ordered to complete. On the contrary, those rules, like section 3, sub. d of the Act, deal only with the discovery and production of existing evidence, and it has been held that it is improper for a court to require a party in such a discovery proceeding to do his adversary's work for him by compiling lists or other information or even by going to the expense of making copies for him. Niagara Duplicator Co., Inc. v. Shackleford, 1947, 82 U.S.App.D.C. 45, 160 F.2d 25 (Copies); United States v. United States Alkali Export Ass'n, S.D.N.Y., 1946, 7 F.R. D. 256 (Lists).

The reasoning in In re Robert T. Cochran & Co., D.C.N.Y., 1930, 44 F.2d 417 is not persuasive.[2] The argument upon which the judge there relies is no longer applicable. Since 1930, the Federal Rules of Civil Procedure, with their very broad discovery provisions, have been adopted, and the Bankruptcy Act has been amended to make them applicable to bankruptcy cases. Consequently the "disadvantage" referred to in that case no longer exists. In re Shulund, supra, does not deal with the questions presented by this appeal. It deals with discovery, not the preparation of schedules and a statement of affairs.

Appellees also rely upon language of the House Judiciary Committee [3] dealing with the inspection of books, accounts, and papers of an alleged bankrupt. The petitioning creditors do have the right to such inspection, both before trial of the issue of solvency under the Federal Rules of Civil Procedure and under section 3, sub. d, and at the trial under section 3, sub. d. But there is nothing in that section or in the Rules that permits a court to require the alleged bankrupts to complete the schedules and statement of affairs required of voluntary and adjudicated involuntary bankrupts by section 7, or to file, in advance of trial, a verified list in detail, showing his admitted assets and liabilities. We find nothing in the legislative history that supports the notion that the courts should read such a requirement into section 3, sub. d. The House committee may have thought that it would be a good idea, but it did not put such a provision in the Act. Until there is an adjudication, a petition to have a party adjudicated an involuntary bankrupt is just another law suit. We see no reason why the petitioning creditors should have the right, which other plaintiffs do not have, to make their opponent do their work for them.

Since we hold that the referee was without power to make the order that he made, it follows that the imposition of a contempt penalty is improper. We therefore express no opinion as to whether

2. "The petitioning creditors will be at a serious disadvantage unless in advance of the trial they have information as to the financial condition which the alleged bankrupt expects to prove." (44 F.2d 417)

3. "In all cases where the question of insolvency is involved, the courts should in advance of the trial, whether by a jury or by the court, a verified list in detail showing the debtor's admitted assets and liabilities and to make provisions for the have the discretion to require to be filed inspection of the books, accounts and papers of the alleged bankrupt by the petitioning creditors in advance of the trial, as in equity rule No. LVIII. This would greatly shorten the length of the trial, especially before a jury, and avoid the present system where, in a complicated case, testimony must necessarily be taken at the trial upon many immaterial matters before the real facts can be ascertained as to the details of the debtor's financial condition. Creditors usually do not and cannot be expected to have a full and comprehensive knowledge of the bankrupt's affairs. The effect would be that at the trial the court or jury, upon the question of insolvency, would have immediately before it all admitted assets and liabilities, leaving only to be determined the question of values." (Statement of the House Judiciary Committee, 75th Cong. 1st Sess., on H.R. 6439 (subsequently amended, reintroduced and reported as H.R. 8046), p. 7.)

section 3, sub. d provides its own exclusive sanction for noncompliance with it.

The order appealed from is reversed.

BARNES, Circuit Judge (dissenting).

I respectfully disagree and dissent.

Appellants insist that the Bankruptcy Act expressly directs that the appropriate schedules of the alleged bankrupt only be submitted *after* it is determined that the respondent is in fact a bankrupt within the meaning of the Act. Appellants cite as authority for this proposition the provisions of 11 U.S.C. § 25(a)(8) and (9).

Section 25(a)(8) reads in pertinent part as follows:

"a. The bankrupt shall * * * (8) prepare, make oath to, and file in court within five days after adjudication, if an involuntary bankrupt, * * * a schedule of his property, showing the amount and kind of property, the location thereof and its money value, in detail; and a list of all his creditors * * *."

Paragraph (9) of section 25, sub. a reads in pertinent part as follows:

"(9) [The bankrupt shall] file in triplicate with the court at least five days prior to the first meeting of his creditors a statement of his affairs * * *."

Appellants note, with regard to paragraph 9, that a first meeting of creditors cannot be held less than ten days after adjudication.

On the basis of these two statutory provisions, appellants assert that the referee improperly ordered them to submit appropriate schedules *prior to adjudication.* Appellants contend that until they are adjudged bankrupt no invasion of the privacy of their business affairs is warranted.

I cannot agree with appellants' construction of the Act, based as it is upon extractions from the Act of certain provisions to the exclusion of others which are of direct relevance. In particular, appellants disregard the express language of 11 U.S.C. § 21(d), which notes the importance of discovery procedures prior to adjudication in assisting in the just determination of whether in fact one is a bankrupt. This provision reads as follows:

"(d) Whenever a person against whom a petition has been filed alleging the commission of the second, third, or fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appeal in court on the hearing, *and prior thereto if ordered by the court,* with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him." (Emphasis added.)

This provision vests in the bankruptcy court the power, in its discretion, to order the production of relevant documents prior to adjudication. The policy behind the provision is consistent with the general well-reasoned policy of the federal courts to encourage liberal use of pretrial discovery procedures. As noted by the court in In re Robert T. Cochran & Co., 44 F.2d 417 (S.D.N.Y.1930):

"The petitioning creditors will be at a serious disadvantage unless in advance of the trial they have information as to the financial condition which the alleged bankrupt expects to prove."

The legislative history of section 3(d) (11 U.S.C. § 21(d)) reinforces appellees' assertion that the bankruptcy court can compel submission of relevant documents prior to adjudication. The pertinent statement of the House Judiciary Committee, 75th Cong. 1st Sess., on H.R. 6439 (subsequently amended, reintroduced and reported as H.R. 8046), p. 7, was quoted in In re Shulund, 210 F.Supp.

195, 198–199 (D.Mont.1962), a case dealing with the identical questions presented by this appeal:

"In all cases where the question of insolvency is involved, the courts should have the discretion to require to be filed in advance of the trial, either by a jury or by the court, *a verified list in detail showing the debtor's admitted assets and liabilities and to make provisions for the inspection of the books, accounts, and papers of the alleged bankrupt by the petitioning creditors in advance of the trial,* as in equity rule No. LVIII. This would greatly shorten the length of the trial, especially before a jury, and avoid the present system where, in a complicated case, testimony must necessarily be taken at the trial upon many immaterial matters before the real facts can be ascertained as to the details of the debtor's financial condition. Creditors usually do not and cannot be expected to have a full and comprehensive knowledge of the bankrupt's affairs. The effect would be that at the trial the court or jury, upon the question of insolvency, would have immediately before it all admitted assets and liabilities, leaving only to be determined the question of values." (Emphasis added partly by district court and partly by the undersigned.)

Contrary to appellants' position, I find nothing in section 3(d) which conflicts in any manner with the provisions cited by appellants for the proposition that the pertinent statements must be filed *after* adjudication. Sections 7a (8) and (9) address themselves to an entirely different issue from that dealt with in section 3(d). The provisions cited by appellants state only that the pertinent statements must be filed within the stated time so as to facilitate the administration of the bankrupt estate after adjudication. Section 3(d), on the other hand, seeks to facilitate the proceedings by discovering whether there should be an adjudication of bankrupty *in futuro.* The referee is aided in this determination by being able, if he so wishes, to compel the production of relevant data, including *lists of assets and liabilities,* if not "schedules and forms." I think this distinction in what must be prepared—a "list" plus "inspection," vis-a-vis a "schedule and/or forms"—is a distinction without a difference; based at best on form and not substance. I believe the referee in the matter at bar acted well within his authority in making his order of September 10, 1963, requiring the appellants to file their schedules of assets and liabilities and statements of affairs prior to adjudication.

The second question raised by appellants relates to the propriety of a contempt penalty for failure to comply with the referee's order. It is not required to be answered by the majority opinion. It should be answered, in my view of the case. Appellees cite section 41 of the Bankruptcy Act (11 U.S.C. § 69) as authority for the district court holding that the alleged bankrupt was in contempt for failure to produce pertinent schedules as ordered. This contempt provision of the Bankruptcy Act states that "a person shall not, in proceedings before a referee, * * * (3) neglect to produce, after having been ordered to do so, any pertinent document * * *." In the absence of any conflicting statutory matter, I agree that section 41 authorizes a contempt citation for failure to comply with the referee's direction to produce documents.

Appellants urge, however, that appellees, in citing the general contempt provisions of section 41, fail to consider the specific statutory provision concerning production of documents prior to adjudication (section 3(d)), the same provision which appellees rely upon as authorization for pre-adjudication discovery procedures. As noted above, section 3(d) expressly states that a failure to produce pertinent schedules, as directed by the referee, shall result in the transfer of the burden of proof to the alleged

bankrupt on the question of solvency. The section provides:

"[I]n case of his [the alleged bankrupt] failure so to do [to produce the requested documents], the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

The case of In re Shulund, supra, considered the relationship of section 3 (d) to the general penalty provisions of Rule 37 of the Federal Rules of Civil Procedure. That court ruled that section 3 (d) imposed an explicit sanction which must take precedence over the broad power of the bankruptcy court to hold a party in contempt for failure to comply with a lawful order. The court stated:

"In view of the express provisions of section 3, sub. d, the sanctions imposed by Rule 37, F.R.C.P. to enforce compliance with discovery procedures are not applicable. The Federal Rules of Civil Procedure must give way when they, or portions thereof, are inconsistent with express provisions of the Bankruptcy Act." 210 F.Supp. at 199.

I cannot agree with the district court's disposition in Shulund to read multiple penalty provisions as mutually exclusive sanctions. I must readily concede that section 3(d) expressly addresses itself to the specific consequences that attach to an alleged bankrupt's refusal to comply with an order to produce documents. And it is a consequence that could not be created by an order punishing for contempt. This provision is indeed more precise in its application to the facts at hand than is the general contempt authorization contained in 11 U.S.C. § 69. But no reason is stated by appellants, nor by the district court in Shulund, why the sanctions imposed by both cannot be applied. Section 3(d) clearly compels a shift of the burden of proof on the question of solvency to the alleged bankrupt who refuses to comply with the production order. But section 3(d) does not state that this is the *sole* penalty to be imposed on a party who refuses to heed an order of a district court. Nor does the

contempt provision of 11 U.S.C. § 69 carve out an exception from its otherwise plenary application for the situation to which section 3(d) is addressed.

The referee in bankruptcy in the present controversy decreed that certain documents were necessary to facilitate the determination of whether respondent was in fact a statutory bankrupt. This disregard of the order of a duly-authorized arm of the judiciary offends the dignity of our judicial system and interferes with the expeditious resolution of matters pending in our overly-crowded courts. In the face of such an affront, I conclude that a contempt citation is a penalty available to the district court in the proper exercise of its discretionary powers. Moreover, as indicated above, the availability of this sanction in no way impedes the operation of section 3(d) which, by statutory mandate, shifts the burden of proof on the question of solvency to the noncomplying alleged bankrupt.

To my mind, the order of the district court should be affirmed.