Henrietta M. FAUCHER, etc., Appellant,

v.

Dolores Knoll LOPEZ, Louise M. Giovannoni, and Joseph E. Hazel, Appellees.

No. 22096.

United States Court of Appeals
Ninth Circuit.

May 13, 1969.

Howard L. Thaler (appeared), Beverly Hills, Cal., for appellant.

Richard M. Moneymaker (appeared), of Tiernan & Moneymaker, Los Angeles, Cal., for appellees.

Before BARNES, HAMLEY and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This is an appeal from a judgment of the district court following a directed verdict in a jury trial, adjudicating appellant to be a bankrupt. Joseph E. Hazel and others, petitioning creditors,[1] filed an involuntary petition in bankruptcy against the appellant on May 14, 1963. She answered denying, among other things, that she was insolvent at the time the alleged acts of bankruptcy occurred, and demanded a jury trial on the issue. She was ordered by the referee, pursuant to Sec. 3(d) of the Bankruptcy Act, 11 U.S.C. § 21(d) to appear before him with her books, papers and accounts and submit to an examination and give testimony on the issue of her solvency. She appeared on August 16, 1963 but invoked the Fifth Amendment of the Constitution and refused to testify.[2] Subsequently in 1963 the receiver appointed by the bankruptcy court filed a motion for an order requiring her to turn over all her books, records and documents to him as custodian of her property. She again refused and asserted privileges under the Fourth and Fifth Amendments of the Constitution as justification; a district judge ruled the books and records were privileged.

Similarly again in 1963, she resisted answering interrogatories on the same grounds. The district judge ordered her to answer the interrogatories within ten days. Appellant likewise refused to answer requests for admissions, and filed a motion for a protective order. The case had been set for trial on June 23, 1964, but on that day the district court granted her an indefinite continuance. Appellees filed a motion for sanctions under Rule 37, Fed.R.Civ.P., and a motion for early trial; both were denied, but appellees' motion for appointment of a Special Master to try non-jury issues was granted.

## THE QUESTIONS PRESENTED

The appellant raises five questions:

1. Was the appointment of the Special Master to try the nonjury issues improper; and were the findings of the Special Master supported by the evidence?

1. Throughout this involuntary bankruptcy proceeding, the caption has been "In the Matter of Henrietta M. Faucher, aka H. M. Faucher." The creditors signing the involuntary petition in bankruptcy were Joseph E. Hazel, Joseph P. Hazel and John J. Giovannoni.

During the proceeding a memorandum of counsel and then the report of the Special Master erroneously listed the petitioning creditors as Joseph E. Hazel, Rebecca M. Hazel, John J. Giovannoni, Louise M. Giovannoni and Delores Knoll Lopez. All were creditors.

We have used as the caption, the same one the appellant and appellees have used in their briefs. The case goes down in legal history as Faucher v. Lopez, although Lopez was not a petitioning creditor.

2. It was stipulated at the hearing before the Special Master on May 23, 1966, that on August 16, 1963, when the appellant was ordered to appear for examination before the referee under Sec. 3(d) of the Bankruptcy Act, the appellant was not incarcerated and could have produced her books, papers and accounts had she not elected to invoke the privilege.

2. Were the claims of appellees as petitioning creditors invalid under California Usury laws, and did appellees have unclean hands?

3. Was appellant deprived of due process by being unable to attend the jury trial on the issue of her insolvency?

4. Did the Special Master and district court shift the burden of proof on the question of insolvency from appellees to appellant?

5. Did the district court improperly direct the verdict in favor of appellees on the issue of insolvency?

## DISCUSSION

Sec. 3(a) of the Bankruptcy Act, 11 U.S.C. § 21(a) reads,

(a) "Acts of bankruptcy by a person shall consist of his having　＊　＊　＊

"(5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property;　＊　＊　＊"

The referee, designated as a Special Master, pursuant to stipulation of counsel at a pretrial conference, found that

"On March 22, 1963, Henrietta M. Faucher suffered the appointment of a receiver　＊　＊　＊"

and

"On March 13, 1963, Henrietta M. Faucher suffered a levy of a writ of attachment upon certain parcels of real estate　＊　＊　＊ and within thirty (30) days from the levy, such lien was neither vacated nor discharged."

The Special Master, after hearing evidence, further found that the claims asserted by the petitioning creditors in excess of $33,000 were debts of the bank-

rupt; were unsecured; were debts in existence at the time of the filing of the involuntary petition; that at the date of filing she owed debts in excess of $1,000; that the petitioning creditors did not have unclean hands and that the alleged bankrupt was estopped to claim that the petitioning creditors had unclean hands; that the transactions which were the basis for petitioning creditors' claims were not usurious. The Special Master further concluded that the burden of proof *on the issue of insolvency* shifted from the petitioning creditors to the alleged bankrupt. This issue was to be later tried to a jury.

No reporter's transcript was prepared by either party and the district judge approved the findings of fact and conclusions of law in the Special Master's report.[3]

The findings of the Special Master disposed of all issues except whether appellant was insolvent or unable to pay her debts as they matured on March 13 and 22, 1963.

Thereafter a jury trial was conducted by the district judge on these remaining issues and the court directed a verdict for appellees and entered a judgment adjudicating appellant a bankrupt.

## I.

### THE SPECIAL MASTER

(a) *Propriety of the Appointment of The Special Master.*

The appellant has only a one line sentence in her brief on the subject, to-wit, "The reference on the non-jury aspects of the cause to a Special Master was improper."

█ Appellant was entitled to a jury trial only on the issues of insolvency and whether the alleged acts of bankruptcy had been committed. Section 19(a) of

---

**3.** The district court modified the conclusions of the Special Master in one respect. It ruled that the burden of proof on the issue of the insolvency of the alleged bankrupt, or the inability of the alleged bankrupt to pay her debts as they matured, *would* shift from petitioning creditors to the alleged bankrupt, at the jury trial of the issue *unless* the bankrupt appeared in court at the trial, produced her books, papers and accounts and submitted to an examination as to insolvency and her ability or inability to pay her debts as they matured.

the Act, 11 U.S.C. § 42(a). In re Airmont Knitting & Undergarment Co. Inc., 182 F.2d 740 (2 Cir.1950); 2 Collier on Bankruptcy, § 19.02 (14th Ed.).

The reference to the Special Master for the trial of non-jury issues was proper. Rule 53, Fed.R.Civ.P. We have not been referred to any objection made in the trial court to the reference and we find none in the record. The one sentence reference to the matter in appellant's brief on appeal comes too late. Coyner v. United States, 103 F.2d 629 (7 Cir.1939); See, McGraw-Edison Co. v. Central Transformer Corp., 308 F.2d 70, 72 (8 Cir.1962).

(b) *The evidence supported the findings by the Special Master.*

The Special Master found that the appellant for many years had been engaged in preparing and selling fictitious promissory notes and deeds of trust, evidenced by fictitious policies of title insurance; that appellant by making payments on account of the fictitious notes induced purchasers to continue to purchase additional fictitious promissory notes and deeds of trust, until she was indicted, convicted and sent to prison in February 1964; that since the notes and documents were spurious there was a failure of consideration and the petitioning creditors, having in good faith paid monies for the notes, had valid unsecured claims in an amount in excess of $33,000.00.

The findings of the Special Master are clearly and overwhelmingly supported by the evidence.

## II.

## THE CLAIM OF USURY AND UNCLEAN HANDS

The Special Master found that the petitioning creditors believed they were purchasing bona fide and valid promissory notes and deeds of trust at a discount; and they did not receive any usurious interest and did not have unclean hands. He concluded they were not estopped from asserting their claims; and that the appellant was estopped from asserting the defense of unclean hands. The findings of the Special Master were clearly supported by the evidence.

The Special Master was correct in his conclusions of law; his report, with its findings and conclusions, was properly approved and adopted by the district court.

The petitioning creditors were not seeking to enforce the notes. They were seeking to recover the monies paid as a result of the fraud perpetrated on them. All amounts received from appellant were credited to the amount of their claims.

We have been cited to no authority and have found none that usury could possibly be a defense in such a situation. Petitioning creditors are not seeking to recover usurious interest. If they were seeking to recover the principal of the notes only, they could recover. It is only the interest which is barred by the California statute. Haines v. Commercial Mortgage Co., 200 Cal. 609, 623, 254 P. 956, 255 P. 805, 53 A.L.R. 725 (1927); Moore v. Russell, 114 Cal.App. 634, 641, 300 P. 479 (1931); Gregg v. Phillips, 105 Cal.App. 132, 286 P. 1071, (1930). But here the petitioning creditors had in substance rescinded because of fraud. They were entitled to a return of their money, less amounts received by them. Since the Special Master found they were purchasing the notes at a discount and were not lending money, usury has utterly no place in the case.

Likewise appellant's claim of unclean hands does not bar the petitioning creditors but this doctrine is applicable to her. She falsely and fraudulently sold the notes and trust deeds to petitioning creditors. She cannot set up her own wrong as a defense. If usury

---

4. The reporter's transcript, although not available when the district court approved the Special Master's report, was prepared for use in the appeal.

were in the case she would be estopped from raising that defense.

## III.

### INABILITY OF APPELLANT TO ATTEND HEARINGS BEFORE THE SPECIAL MASTER AND THE JURY TRIAL

Appellant was in the California Institution for Women at the hearing before the Special Master. However, she was ably represented by counsel. The Special Master found that appellant's counsel at the commencement of a continued hearing on May 23, 1966 raised the question of appellant's absence. The Special Master also found that appellant's counsel made no showing whatever that a writ of habeas corpus ad testificandum, nor the appropriate fees had been delivered to the United States Marshal; nor that the writ had been served.

The lack of presence of appellant at the jury trial before the district court was raised in that proceeding. Appellant was again absent. This time a writ had been issued and served. No effort was made by appellant to secure compliance with the writ. The district court offered to move the trial to the place of confinement of the appellant. Her counsel did not pursue or accept the offer.

 There is no constitutional right of a litigant to be personally present during the trial of a civil proceeding. Appellant cites no cases so holding, and the cases cited are not in point; some are criminal or contempt cases; others concern service of process or notice of hearing. The contention is without merit.

## IV.

### THE SHIFTING OF THE BURDEN OF PROOF UNDER SEC. 3(d) OF THE ACT

Sec. 3(d) of the Act (1938), 11 U.S.C. § 21(d) reads,

> "Whenever a person against whom a petition has been filed alleging the commission of the second, third, or fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing, and prior thereto if ordered by the court, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

Sec. 3(d) of the Act of 1898 was similar to the present act in its provision shifting the burden of proof, reading "* * * the burden of proving his solvency shall rest upon him." The reference to "ability or inability to pay his debts as they mature" was added in 1938. See Collier on Bankruptcy, Vol. I, Sec. 3.01(2) p. 396–399 (14th Ed.).

The cases under the 1898 Act approved the shift in the burden of proof. Bogen & Trummel v. Protter, 129 F. 533, 535 (6 Cir.1904); Hollister v. Oregon Hardwood Mills, 15 F.2d 787 (9 Cir.1926); In re Wilson, 16 F.2d 177, 178 (7 Cir.1926). There is a lack of later cases on the problem. Collier states the rule to be the same under the 1938 Act. Collier on Bankruptcy, Sec. 3.208 (2) pages 456–457 (14th Ed.); In re Eastern Supply Company, 197 F.Supp. 359, 363 (W.D.Penn.1961) so holds. See Berg v. Hoppe, 352 F.2d 776 (9 Cir. 1965).

Appellant claims that while she was in prison she could not produce her books and records. In re Ross and O'Brien Iron Works Inc., 58 F.2d 961 (2 Cir. 1932), cited by appellant is not in point. The fact that appellant was in custody would not prevent her from authorizing her attorney or some other person to produce the books.

In replying to the offer of the district court to hold the trial at the prison, appellant's counsel stated, "I have explained this to the court before * * * not only to your Honor but to the var-

ious other judges and referees who have at one time or another had the case: *Insofar as I know there are no books or records which can be produced even if Mrs. Faucher were not* [*sic*] *or had not exercised the Fifth Amendment.* I have represented this to the court before and only from information given to me \* \* \*". (emphasis added)

Appellant's brief asserts her constitutional privilege against self incrimination under the Fifth Amendment without citation of any supporting authority.

■ However, neither the Special Master[5] nor the district judge relied on Sec. 3(d) of the Act, 11 U.S.C. § 21(d) in arriving at his findings or conclusions. Appellant's contention as to the shift in the burden of proof is without merit.

## V.

### THE TRIAL COURT PROPERLY DIRECTED A VERDICT IN FAVOR OF APPELLEES

Upon the adoption and approval of the Special Master Report, all issues were determined except whether appellant on March 13, 1963 and March 22, 1963, the dates of the levy attachment and the appointment of the receiver was either (1) insolvent or (2) unable to pay her debts as they matured, as provided in Sec. 3(a) of the Act, 11 U.S.C. § 21(a).

The claims of the petitioning creditors (appellees herein) totaling in excess of $33,000 were debts due them from the dates on which they paid monies for the fictitious notes and deeds of trust; the dates running from April 18, 1957 to August 27, 1962. To arrive at the amount of the claim, there was credited against the amounts paid, all monies received in payment of principal or interest on the ficitious notes. The last

payments of interest were on March 8, 1963. Thus, these monies totaling in excess of $33,000 were just and matured debts from the dates that the monies were paid to appellant, and were matured and unpaid on March 13 and March 22, 1963.

With this background a jury trial was had on the issues of legal and equitable insolvency. Both appellant and appellees offered evidence. The trial court directed a verdict for appellees and made findings adopting and incorporating the Report of the Special Master. The court also found as a fact that the alleged bankrupt was unable to pay her bills as they matured on the dates of the acts of bankruptcy, and that this finding was supported by the overwhelming weight of the evidence, and that "Reasonable men could not possibly come to a different conclusion." Accordingly, a judgment adjudicating appellant a bankrupt was entered by the court on June 8, 1967.

At the jury trial, both appellant and appellees offered evidence. Appellant's proof was directed to monies in the hands of a State receiver, a question of legal insolvency. She offered no other proof. Legal insolvency (excess of debts over total assets) was probably not proved, and the trial court did not base its adjudication of bankruptcy on that ground. But appellees did prove that appellant was insolvent in the equity sense, i.e. was unable to pay her bills as they matured on the dates of March 13 and 22, 1963.

■ In the absence of production of books and records, no great amount of proof is necessary to prove that an alleged bankrupt is unable to pay his debts as they mature. See, In re Eastern Supply Co., 197 F.Supp. 359 (W.D.

5. The Special Master concluded "\* \* \* the burden of proof on the issue of insolvency has shifted from the petitioning creditors to the alleged bankrupt and that she has failed to assume or sustain such burden."

But the Special Master did not find on either insolvency or failure to pay debts as they matured. He was speaking of the future hearing to be held before a jury on such issues.

Moreover, the conclusion above set forth was modified by the district court at the time the Report of the Special Master came before the district court for approval. [See note 3, supra].

Pa.1961). Inability to pay debts as they mature, i.e. insolvency in the equity sense, may be proved by inference, Eastern Supply, supra, p. 362; *cf.* In re Wilson, 16 F.2d 177 (7 Cir.1926).

The proof showed appellant had an account at the Security First National Bank. Appellant offered no proof of any other account. On March 13, 1963, the bank claimed its banker's lien for an obligation of $4040.44, deducted that amount from the account; there was left a balance of $40.97. This remained her balance until March 18, 1963, when three small checks cleared leaving a balance of 47 cents, which continued to be the balance on March 22, 1963. On April 4, there was a debt for $2.00 for a returned check, leaving an overdraft of $1.53. This overdraft continued to April 23, 1963 when the bank closed out the account.

 Mrs. Rebecca Hazel was the daughter of Joseph E. Hazel, one of the appellees. She maintained a joint-tenancy account with her father. Appellant mailed a check for $165.00 which was received by the Hazels March 8, and deposited April 10, 1963. The Hazels never received the money shown by the check. The failure to promptly deposit did not prevent them from being the holder of a just debt on March 13 and March 23, 1963. The check was a promise to pay money. Had the check been deposited on March 13, after the exercise of the banker's lien, or thereafter, it would not have cleared the account.

John J. Giovannoni, another petitioning creditor had a $300 payment due him from appellant in March 1963. The check was never received. He received a check for $165.00 on March 2, 1963 from appellant on another note. It was deposited and returned stamped N.S.F. (not sufficient funds). He never thereafter received the money or the check, although he tried to contact appellant by phone and by calls at her house.

Giovannoni's testimony as to the $165.00 check was weakened on cross-examination when he admitted he might have received the check in April 1963 instead of March. A jury issue would have existed as to this item. But there was no proof offered to contradict the balance of his testimony, or testimony of Rebecca Hazel, or the facts concerning appellant's bank account.

Clearly appellant was unable to pay her debts as they matured and on the facts presented to the jury, no other conclusion could have been reached. The district court properly directed a verdict.

The judgment is

Affirmed.